**Carl Allen JACKSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–97–00162–CR.**

Court of Appeals of Texas, Texarkana.

Submitted April 20, 1998.

Decided April 21, 1998.

Ralph H. Walton, Jr., Walton, Brown, Walton, Seilheimer & Reid, Granbury, for appellant.

Richard Hattox, Dist. Atty., Granbury, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

OPINION

CORNELIUS, Chief Justice.

A jury convicted Carl Allen Jackson of aggravated sexual assault and set his punishment at ninety-nine years' imprisonment and a $10,000.00 fine. We affirm his conviction.

The alleged victim was Jackson's fifteen-year-old stepdaughter ("J.C."). At the time of the alleged assault, the family lived in a mobile home in Somervell County, but was planning on moving to a new residence in Hood County. At trial, J.C. testified that she had asked permission of her mother and stepfather to go to the new residence to clean it. The plan was that Jackson would drive J.C. to the residence and leave her there to do the clean-up; she would be there overnight, and he would pick her up the next day after work. During the course of the evening hours, someone entered the residence and raped J.C.

J.C. testified that it was late in the evening when the rape occurred. She said she first heard a noise like someone was in the room. She covered her head with a blanket because she was afraid. She was too afraid to get up and run. She then felt someone sit down in the chair next to her. Someone who was making the noise tapped her, and J.C. testi-

fied that she was very afraid that she would be killed or kidnapped. The assailant uncovered and jumped on J.C., who was pretending to be asleep. The assailant began rubbing her, then closed her mouth and eyes and taped them closed with duct tape. Her entire face was eventually covered with duct tape, and she testified that she "hurt bad." After the rape, she was left lying there for several hours until Jackson appeared the next morning. J.C. said that she did not know who committed the rape.

After the police became involved, Jackson signed two forms consenting to a search of the mobile home and the residence. When officers conducted the search, they found blood evidence on certain items in the mobile home in Somervell County and at the residence in Hood County. In the mobile home, they found some underwear and a pair of jeans worn by Jackson that had blood stains on them. In the Hood County residence, the police found a blanket that contained blood and semen stains.

The State produced a forensic serologist, who testified that she had blood type and DNA tests run on all the stains. She testified that, according to the DNA tests, the blood stains on Jackson's underwear and pants were from J.C. The blood stains on the blanket were also from J.C. Another stain on the blanket was a mixed stain that was traceable to both Jackson and J.C. The mixed stain showed no trace of a third person.

Jackson asserts in four points of error that the trial court erred in: (1) denying his motion to suppress evidence taken from his two homes; (2) admitting into evidence his jeans and his stepdaughter's blood because of a broken custodial chain; (3) failing to charge the jury on the lesser included offense of sexual assault; and (4) failing to grant his motion for an instructed verdict of acquittal.

We first consider the denial of Jackson's motion to suppress. Jackson argues that he did not voluntarily consent to the search, so the evidence found at the two locations should not have been admitted into evidence.

We review the trial court's ruling on the motion to suppress using an abuse of discretion standard. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996). We view the record in the light most favorable to the trial court's ruling, and we affirm the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law. *Id.* We are required to afford the trial court great deference as the primary fact finder in deciding fact issues. *DuBose v. State,* 915 S.W.2d 493, 495 (Tex.Crim. App.1996) (citing *Arcila v. State,* 834 S.W.2d 357, 360 (Tex.Crim.App.1992)). This same standard applies to the ruling on whether Jackson voluntarily consented to a search. *Id.*

A search conducted with the consent of the defendant is reasonable even when there is no search warrant and no probable cause. *Juarez v. State,* 758 S.W.2d 772, 776 (Tex.Crim.App.1988). Voluntary consent, however, must be proven by clear and convincing evidence. *Johnson v. State,* 803 S.W.2d 272, 286–87 (Tex.Crim.App.1990). The consent must be positive, unequivocal, and not the product of duress or coercion. *Rosalez v. State,* 875 S.W.2d 705 (Tex.App.-Dallas 1994, pet. ref'd). The consent to search must be the result of the defendant's own choice rather than of overborne will. *Juarez v. State,* 758 S.W.2d at 776 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)). Texas uses the totality of the circumstances test for the voluntariness determination. *Id.* In reviewing the totality of the circumstances, the fact that the State informed a defendant of his *Miranda* [1] warning is to be considered in favor of voluntariness. *Juarez v. State,* 758 S.W.2d 772. Also, the fact that the State informed the defendant of his right not to consent is to be considered in favor of voluntariness. *May v. State,* 618 S.W.2d 333, 345 (Tex.Crim.App.), *vacated and remanded on other grounds,* 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981); *Stewart v. State,* 874 S.W.2d 752 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

The police questioned Jackson for forty to fifty minutes before noon. Then Jackson left to care for his dog. At approximate-

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ly 3:30 p.m., the police gave Jackson his *Miranda* warnings and once again questioned him for about an hour and a half. At the end of this second questioning, Jackson signed a written consent to search form. The officers read the consent form to Jackson, explained his right to refuse the search, and all parties signed it. Jackson admitted that he understood the consent to search forms when they were read to him and had no questions about them. Further, he said he understood that some evidence could be seized, although he did not anticipate it would be used against him in a criminal proceeding. He understood that he did not have to give consent, and admitted that he was not threatened or coerced. Under these circumstances, we find that the trial court did not abuse its discretion in ruling that the State proved by clear and convincing evidence that the consents were voluntarily given.

Jackson argues that even if the consents were voluntary, the second form, which applied to the residence in Hood County, was fatally defective because it had the wrong county listed. Consent need not be in writing. Jackson testified that he first orally gave the officers consent, and that he knew where they were talking about. Thus, even if the error made the written consent invalid, though we refuse to so hold, the police had a valid oral consent to search.

Next, Jackson argues that the Somervell County sheriff's deputies were without authority or jurisdiction to search his residence in Hood County, and thus the trial court erred in admitting evidence recovered in Hood County. The Texas exclusionary rule is found in Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.1998). It mandates that no evidence obtained illegally shall be admitted in a trial. *Id.* A violation of a state or federal law or constitutional provision in obtaining evidence requires suppression of that evidence, and the trial court has no discretion in ruling on the exclusion of that evidence. Tex.Code Crim. Proc. Ann. art. 38.23; *Polk v. State,* 738 S.W.2d 274, 276 (Tex.Crim.App.1987). Not every violation of a "law" of Texas, however, will invoke the exclusionary rule. *Roy v. State,* 608 S.W.2d 645 (Tex.Crim.App. [Panel Op.] 1980). The laws that will invoke the exclusionary rule are those that protect the rights and interests of citizens from infringement by the State. *See generally, Stockton v. State,* 756 S.W.2d 873 (Tex.App.-Austin 1988, no pet.).

Jackson claims that the search by the Somervell County sheriff's office violated Tex.Code Crim. Proc. Ann. art. 2.17 (Vernon 1977). This provision states that each sheriff will be the conservator of the peace in his county. Article 2.17 only directs sheriffs in their capacity as peace officers; i.e executing a search warrant or making an arrest. Here, when Jackson voluntarily gave his consent to the deputies to search his Somervell County mobile home and Hood county residence, they were acting much like regular citizens who are not restricted by jurisdictional limits. The Texas Court of Criminal Appeals has stated, "It should be borne in mind that the fruits of a search are admissible unless the search itself is illegal. It matters not whether the search is conducted by an officer or a mere citizen; if it is effected with the consent of the person in charge of the premises, then it is not illegal." *Day v. State,* 157 Tex.Crim. 614, 252 S.W.2d 180, 182 (1952); *see also Tsoi v. State,* 489 S.W.2d 103, 105 (Tex.Crim.App.1972). The sheriffs did not execute an illegal search outside of their jurisdictional limits, because Jackson consented to the searches.

Jackson also contends that the trial court erred in admitting into evidence his bloodstained jeans and a sample of J.C.'s blood because the State failed to prove the chain of custody. We use an abuse of discretion standard when reviewing the trial court's decision to admit evidence. *Smith v. State,* 683 S.W.2d 393, 404 (Tex.Crim.App. 1984); *Garner v. State,* 848 S.W.2d 799, 802 (Tex.App.-Corpus Christi 1993, no pet.). The trial court does not abuse its discretion in admitting evidence where it believes that a reasonable juror could find that the evidence has been authenticated or identified. *Pena v. State,* 864 S.W.2d 147, 152 (Tex.App.-Waco 1993, no pet.); *Coleman v. State,* 833 S.W.2d 286, 289 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

Texas Rule of Criminal Evidence 901 governs authentication. *See* TEX.R.CRIM. EVID. 901 (Vernon 1997) (now TEX.R. EVID. 901). Rule 901 generally requires that a party who offers an item of evidence must prove that the item is what the party represents it to be before the item is admissible. *See* TEX.R.CRIM. EVID. 901(a); *Simmons v. State,* 944 S.W.2d 11, 12 (Tex.App.-Tyler 1996, pet. ref'd). When the evidence is an object or document with unique or distinctive characteristics, the testimony of a person who perceived the item at the relevant time normally suffices to identify the evidence in court. *Jordan-Maier v. State,* 792 S.W.2d 188, 192 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). When the evidence does not have unique or distinctive characteristics, the chain of custody may be required to establish that the item presented in trial is the same one involved in the events in issue.

Jackson's bloodstained jeans were admitted through Jackson's own wife. She testified that she had personal knowledge of the jeans offered in evidence, and that Jackson was wearing them on the night J.C. was assaulted. This testimony from someone with personal knowledge that the jeans were what the State claimed they were was sufficient to authenticate the jeans. *See* TEX. R.CRIM. EVID. 901(b)(1).

Ms. Dark, a medical technologist, testified that she took a blood sample from J.C. She testified that she labeled, dated, and signed the sample, then handed it to an officer. Officer Leavines testified that State's Exhibit 25 was the sample taken from J.C. He testified that he remembered J.C. by a pseudonym name, R.P., and that he had met her at the hospital. J.C. submitted to the taking of the samples requested. The samples were placed in the sexual assault kit, sealed, and given to him. Officer Leavines testified that he never tampered with the seals, and he submitted them to the Tarrant County medical examiner's office. Ms. Patton, a Tarrant County medical examiner's technician, identified State's Exhibit 25. It was sealed when it was given to her, and it contained the known blood sample of the victim. Thus, every person who had custody of the sample between the time the blood sample was drawn and the time it was tested, testified to its authenticity. This was sufficient to prove the chain of custody as to J.C.'s blood sample.

Next, Jackson argues that the trial court erred in denying his requested charge to the jury on the lesser included offense of sexual assault. In a trial before a jury, a defendant is entitled to a jury instruction on a lesser included offense when (1) the lesser included offense is included within the proof necessary to establish the offense charged, and (2) some evidence exists that if the defendant is guilty, he is guilty only of the lesser offense. *Penry v. State,* 903 S.W.2d 715, 755 (Tex.Crim.App.1995); *Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim.App. 1993).

As for the first requirement, sexual assault is in the proof necessary to establish aggravated sexual assault. *See* TEX. PENAL CODE ANN. §§ 22.011, 22.021 (Vernon 1994 & Supp.1998); *Ramos v. State,* 865 S.W.2d 463, 465 (Tex.Crim.App.1993); *Nevels v. State,* 954 S.W.2d 154, 161 (Tex.App.-Waco 1997, pet. ref'd); *Fraga v. State,* 940 S.W.2d 736, 737 (Tex.App.-San Antonio 1997, pet. ref'd); *Chavis v. State,* 807 S.W.2d 375 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Trotti v. State,* 698 S.W.2d 245, 246 (Tex.App.—Austin 1985, pet. ref'd). We turn to the second requirement. The determination of whether sexual assault is a lesser included offense of aggravated sexual assault must be made on a case-by-case basis, because lesser included offenses are defined in terms of the facts of the case as well as the terms of the offense. *Bohnet v. State,* 938 S.W.2d 532 (Tex.App.-Austin 1997, pet. ref'd).

Sexual assault is elevated to aggravated sexual assault if one of the specified list of aggravating factors is also proved. The aggravating element the State alleged and had to prove in this case was that Jackson, in the commission of the sexual assault of J.C., by his acts or words placed J.C. in fear of imminent death or serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(ii) (Vernon Supp.1998). Thus, in order for Jackson to be entitled to a charge on the lesser included offense of sexual assault,

there must be some evidence that if he was guilty of any offense, it was only sexual assault without the aggravating factor.

If evidence from any source raises the issue of a lesser included offense, a charge on that offense must be included in the court's charge. *Penry v. State,* 903 S.W.2d at 755; *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App.1992). It is not enough that the jury may disbelieve evidence pertaining to the greater offense; rather, there must be some evidence directly germane to the lesser included offense. *Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Crim.App.1997); *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App.1994). We must consider all the evidence introduced at trial, whether produced by the State or Jackson. *Penry v. State,* 903 S.W.2d at 755. Additionally, the credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser included offense should be given. *Penry v. State,* 903 S.W.2d at 755; *Saunders v. State,* 840 S.W.2d at 391. A defendant's own testimony, though contradicted, is sufficient to require an instruction on a lesser-included offense. *Hunter v. State,* 647 S.W.2d 657 (Tex.Crim.App.1983). If the evidence proves that the defendant is either guilty of aggravated sexual assault or completely innocent, then the trial court should not give a charge on a lesser included offense. *Bravo v. State,* 627 S.W.2d 152, 157 (Tex.Crim.App.1982). In order for the lesser included charge to be required in this case, there must be evidence that Jackson did not place J.C. in fear of imminent bodily injury or death.

J.C. testified that she was alone when the aggravated sexual assault occurred. When she heard a noise, she covered her head with a blanket because she was afraid. She testified that she was too afraid to get up and run, and that she was afraid that she was going to be killed or kidnapped. Further, J.C. testified that while the aggravated sexual assault was occurring she did not fight back because she felt that the assailant would kill her. Additionally, she was covered in duck tape and could not move and could only breathe through her nose. We find no evidence that if Jackson was guilty of any offense, he was guilty only of sexual assault. The court did not err in refusing the lesser offense charge.

In Jackson's last point of error, he complains that the trial court erred in denying his motion for an instructed verdict of acquittal. To support this contention, Jackson argues that the victim's own testimony was insufficient as a matter of law to prove beyond a reasonable doubt that she was placed in fear that she was in danger of imminent death or serious bodily injury or kidnapping.

A directed verdict is proper only if there is no evidence or legally insufficient evidence to prove an essential element of the offense, so if there is any evidence supporting the essential elements of the offense, a directed verdict is improper. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App. 1990); *Chase v. State,* 573 S.W.2d 247, 249 n. 1 (Tex.Crim.App. [Panel Op.] 1978). In *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App. 1996), the Texas Court of Criminal Appeals authorized appellate courts to conduct both legal and factual sufficiency reviews. The Court's decision in *Clewis,* however, has not changed the traditional appellate court review of a trial court's ruling on a motion for directed verdict. *See Monterrubio v. State,* 941 S.W.2d 322, 326 (Tex.App.-Corpus Christi 1997, no pet.); *Rodriguez v. State,* 939 S.W.2d 211, 218 (Tex.App.—Austin 1997, no pet.); *Rohrscheib v. State,* 934 S.W.2d 909, 910 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Thus, Jackson's final point of error only presents us with a legal sufficiency challenge to the evidence.[2]

We have already found that there is some evidence that J.C. was placed in fear of immi-

2. An appellate court may entertain a factual sufficiency review only if it is properly presented. *See Clewis v. State,* 922 S.W.2d 126, 128–29 (Tex.Crim.App.1996) (wherein the court states, "it [an appellate court] may proceed further to review factual sufficiency if it is properly raised"). One court of appeals has interpreted this language in *Clewis* to mean that a defendant must raise the challenge to factual sufficiency in a point of error in his brief. *See Davila v. State,* 930 S.W.2d 641, 648 (Tex.App.-El Paso 1996, pet. ref'd).

nent serious bodily injury, death, or kidnapping. Consequently, a directed verdict of acquittal would have been improper.

The judgment is affirmed.