**Michael Antonio LEWIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–99–00001–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted March 9, 2000.

Decided March 10, 2000.

**252**

Eric Albritton, Holmes Law Office, Longview, for appellant.

Charles C. Bailey, Dist. Atty., Mt. Pleasant, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Michael Antonio Lewis appeals from his conviction for capital murder. The trial court held a hearing on Lewis' motion to suppress, denied the motion, and entered findings of fact and conclusions of law.[1] Lewis then pled guilty to the charged offense and was sentenced to life in prison.

Lewis contends that the trial court erred by denying his motion to suppress. He claims that his consent to search and his subsequent confession were tainted by the unconstitutional seizure of his person, by his warrantless arrest, and by the fact that he was arrested by a Titus County officer outside his jurisdiction. He also claims that both his consent to search and his confession were involuntary. Finally, Lewis asserts that the trial court erred by failing to adequately address the search and seizure issues in its findings of fact and conclusions of law. We overrule all points of error and affirm the judgment of the trial court.

---

1. Lewis filed three separate motions to suppress in an effort to keep out any written or oral statements, any extraneous offenses, and any physical evidence; however, only one hearing was held for all three motions.

On April 12, 1998, the bodies of Yolanda Lewis and Sedreon Shine were found in a single story residence in Titus County. Lewis had been strangled to death, and Shine had died from a gunshot wound. During the initial investigation, the police learned that Lewis' husband, Michael Antonio Lewis, lived in the residence where the bodies were found, that he drove a maroon Nissan Maxima, and that he had not been seen since the murders occurred.

The next day, the police received information that Lewis was in the Longview area of Gregg County. Sherria Jones informed the police that on the night of the murders, Lewis had driven her to Longview in his maroon Nissan Maxima. She also informed them that she had seen a rifle in the back seat of Lewis' car, that Lewis had blood on his ear, and that when she questioned him about the blood, he told her that he and his wife had been fighting. Jones took the police to the residence where she had last seen Lewis and pointed out both Lewis and his vehicle to the officers.

The police officers from Titus County, Mark Alexander and Cliff St. Clair, were accompanied by Riley Taylor and Eric Hewitt, officers from Gregg County. The police officers approached Lewis and told him that they would like to speak with him. Lewis agreed to talk to the officers, and at this point Alexander orally advised Lewis of his *Miranda*[2] rights. Alexander then asked for Lewis' consent to search his vehicle. Lewis verbally agreed to this search, and the officers contend that he also signed a written consent to search form.[3] During the search of the car, Alexander found socks that appeared to have dried blood on them, and some .22 caliber shells. At this time, Alexander told Lewis that he was going to impound the vehicle.

Alexander considered Lewis a suspect at this time and asked Lewis if he would accompany him to the Longview police station, which Lewis agreed to do. When they arrived at the police station, Alexander once again advised Lewis of his rights, this time showing him a "Notice of Miranda Rights" form, which Lewis signed. Lewis waived these rights, and Alexander interviewed Lewis. During the course of this interview, Lewis made a statement to Alexander, admitting that he strangled Yolanda Lewis and shot Sedreon Shine with a .22 caliber rifle, and Alexander wrote down the content of this statement. Lewis reviewed this written statement, initialed changes where necessary, and signed the confession. This confession also contained written notice of Lewis' *Miranda* rights.

■■■ Lewis' first complaint on appeal is that the trial court should have granted his motion to suppress. Ordinarily, a trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). At the hearing on the motion, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Blanks v. State*, 968 S.W.2d 414, 419 (Tex.App.-Texarkana 1998, pet. ref'd), *citing Villarreal*, 935 S.W.2d at 138. A reviewing court must view all the evidence in the light most favorable to the trial court's ruling, and must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138.

■■■ Lewis first contends that his confession to the police and his consent to search were tainted by the unconstitutional seizure of his person. Investigative detentions and arrests are seizures for purposes of constitutional analysis. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim. App.1995). Under both the federal and state constitutions, a seizure has occurred

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Lewis contends that he did not sign any consent form before the police officers searched his vehicle.

when a reasonable person would believe that he or she was not free to leave and that person has actually yielded to a show of authority or has been physically forced to yield. *Id.* at 236.

■ However, law enforcement officers are permitted to approach citizens, without any justification, to ask questions and even to request a consent to search. *Id.* at 235. If a reasonable person would feel free "to disregard the police and go about his business," then this is an encounter which is consensual and merits no further analysis. *Id.,citing California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690, 698 (1991).

■ In this case, Alexander approached Lewis, told him that he was a police officer, and asked Lewis if he would agree to speak with him. Lewis agreed. At this point, this meeting was merely an encounter. *See Hunter v. State*, 955 S.W.2d 102, 104 (Tex.Crim.App.1997). However, after this initial conversation, Alexander advised Lewis of his *Miranda* rights and requested Lewis' permission to search his vehicle, which was parked in the driveway. Lewis gave the officer his permission to search the vehicle, and Alexander began his brief search. Although Alexander was the only officer engaging in conversation with Lewis, there were three other officers on the scene with Alexander. All officers on the scene had weapons that were visible to Lewis throughout this encounter.

■ At this point, the encounter had evolved into an investigative detention. *See Hunter*, 955 S.W.2d at 104–05. When police questioning becomes a detention, that detention must be based on reasonable suspicion. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997).

> [T]he reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences

from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity.

*Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim.App.1997). In this case, Alexander had observed two dead bodies at Lewis' home. During his initial investigation, he had been told that Lewis had not been seen since the murders had occurred. Additionally, Alexander received information from Sherria Jones that on the night of the murders, Lewis had a rifle in his car and blood on his ear, and had admitted to having a fight with his wife. These facts justified an investigative detention of Lewis.

Then, during the search of the vehicle, Alexander found a pair of socks, with what appeared to be dried blood on them, and some .22 caliber shells. This provided additional grounds for Alexander's suspicion of Lewis' involvement in the double homicide. At this time, Alexander told Lewis that he was going to impound the vehicle, and Lewis offered no complaints or reasons why this should not occur. Alexander then asked Lewis if he would accompany him to the police station for further questioning. Lewis agreed, even though Alexander informed Lewis that he was under no obligation to do so. At this point, Alexander had even more reason to be suspicious of Lewis' involvement in the two murders; therefore, he had further justification to continue his investigative detention. At the station house, Alexander questioned Lewis about the murders, and Lewis confessed.

■ Lewis argues that he was seized at the moment the officers initially approached him and claims that this seizure was unconstitutional because it was not based on probable cause. However, as previously noted, a seizure does not always have to be based on probable cause. Only when a person is arrested or in the custody of the police does there need to be probable cause. Lewis was not placed un-

der arrest until after he gave his voluntary confession, and he was not in custody. Going to the police station for questioning does not of itself constitute custody.

Where a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime, we are unable to hold that under the circumstances such a person is restrained of his freedom of movement. Under those circumstances, he is not in custody.

*Dancy v. State,* 728 S.W.2d 772, 778–79 (Tex.Crim.App.1987); *see also Bates v. State,* 15 S.W.3d 155, 158 (Tex.App.-Texarkana 2000, no pet. h.). In the case at hand, Lewis willingly accompanied Alexander and the other officers to the station. He was not restrained of his freedom of movement to the degree associated with an arrest, and the officers had reasonable suspicion to justify his detention. *See Dowthitt v. State,* 931 S.W.2d 244, 255 (Tex. Crim.App.1996). This point of error is overruled.

▮▮▮ Lewis' next point of contention is that his warrantless arrest tainted his consent to search and his subsequent confession. However, as addressed above, Lewis was not under arrest when he gave his consent to search his vehicle, nor was he under arrest when he made his confession at the police station. It is true that

[t]he length of detention, the nature of the officer's questions, the use of handcuffs, drawn weapons, physical force or threatening language, or a relocation of the individual to the scene or the police station all could evoke a reasonable deduction that an arrest has occurred.

*Dean v. State,* 938 S.W.2d 764, 769 (Tex. App.-Houston [14th Dist.] 1997, no pet.), *citing Francis v. State,* 922 S.W.2d 176, 180 (Tex.Crim.App.1996). However, a voluntary agreement to accompany officers to the police station, where there were no

threats or physical force used, no handcuffs, and no weapons drawn, hardly constitutes an arrest; therefore, the fact that no warrant had been issued had no effect on Lewis' consent to search or his subsequent confession. This point of error is overruled.

▮▮▮ Lewis also contends that his consent to search and his subsequent confession were tainted by the fact that he was arrested by a Titus County officer in Gregg County, which is outside the Titus County officer's jurisdiction. Generally, both common law and statutory law limit a peace officer's authority to his own geographical jurisdiction. *Thomas v. State,* 864 S.W.2d 193, 195 (Tex.App.-Texarkana 1993, pet. ref'd). However, if any police officer who is present at the arrest does have territorial jurisdiction to make the arrest, the arrest is considered to be lawful. *Morris v. State,* 802 S.W.2d 19, 20 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd). Lewis was placed under arrest by a Titus County officer in Gregg County. However, a Gregg County officer was present at the police station when this arrest was made. Therefore, the arrest was lawful, and this point of error is overruled.

▮▮▮ Next, Lewis argues that both his consent to search and his confession should be suppressed because they were not voluntarily given. In order for consent to be voluntary, it must be positive, unequivocal, and not the product of duress or coercion. *Jackson v. State,* 968 S.W.2d 495, 498 (Tex.App.-Texarkana 1998, pet. ref'd), *citing Rosalez v. State,* 875 S.W.2d 705 (Tex.App.-Dallas 1993, pet. ref'd). It is the State's burden to prove the voluntariness of consent by clear and convincing evidence. *Jackson,* 968 S.W.2d at 498. In this case, there is no evidence that any threats or coercion were used in order to obtain Lewis' consent. When Alexander began speaking with Lewis, he verbally advised Lewis of his *Miranda* rights, and he asked for Lewis' consent to search his

**256**

car. He informed Lewis that he did not have to consent to the search. Lewis, nonetheless, gave his consent both verbally and in writing. Using the totality of the circumstances voluntariness test, we find that Lewis' consent was voluntarily given. *See Reyes v. State,* 741 S.W.2d 414, 430 (Tex.Crim.App.1987). This point of error is overruled.

 On the other hand, a statement is involuntary if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice. *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Crim. App.1995). Once again, the totality of the circumstances must be considered. *Green v. State,* 934 S.W.2d 92, 99 (Tex.Crim.App. 1996). In this case, Lewis willingly accompanied the officers to the police station, even though he was informed that he was not required to do so. He was not under arrest, he was not in custody, and he was not threatened or coerced into making his confession. Additionally, when Lewis was questioned at the police station, he was once again given both verbal and written *Miranda* warnings. In light of the surrounding facts and circumstances, we agree with the trial court that Lewis' confession was voluntary. This point of error is overruled.

■ Finally, Lewis contends that the trial court erred by failing to address the search and seizure issues in its findings of fact and conclusions of law. According to Article 38.22, § 6, the following issue must be addressed in the court's findings of fact and conclusions of law:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding ... as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact ... the court must enter an order stating its conclusion as to whether or

not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based,....

TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979). However, there is no requirement that the trial court address all search and seizure issues. The court is required by the Code of Criminal Procedure to enter findings of fact and conclusions of law with regard to the issue of voluntariness. *Id.* In the instant case, the court complied with this requirement. This point of error is overruled.

The judgment of the trial court is affirmed.