Affirmed and Memorandum Opinion filed April 22, 2008








Affirmed and Memorandum Opinion filed April 22, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01090-CR

____________

 

ISIDRO DELEON RODRIGUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 1062588

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Isidro Deleon Rodriguez, appeals his conviction
for possession of a controlled substance, specifically cocaine, weighing more
than four hundred grams, with intent to deliver. Tex. Health & Safety Code
Ann. ' 481.112 (Vernon
2003).  A jury found appellant guilty and sentenced him to life in the Institutional
Division of the Texas Department of Criminal Justice.  In two issues, appellant
contends the trial court erred when it denied his motion to suppress and the
evidence is factually insufficient to support the verdict. We affirm.








Factual and Procedural Background

On March 23, 2006, officers with the Houston Police
Department and agents of the Drug Enforcement Administration set up
surveillance of appellant=s residence.  The lead officer on the
case, Detective Paul Steffenauer, requested the surveillance because the police
had reason to believe another drug suspect had either dropped off or picked up
twenty-two kilos of cocaine at appellant=s residence. 
While the surveillance was in progress, appellant left his house and got in his
vehicle.  As appellant pulled out of his driveway, he made eye contact with one
of the officers conducting the surveillance.  This officer, Arnold Alvarez,
reported he believed appellant had spotted the surveillance.  When appellant
returned home approximately thirty minutes later, the officers conducting the
surveillance of the residence decided to approach appellant and ask for
appellant=s consent to search his residence.

Because Detective David Wall had noticed during the
surveillance that appellant always entered the house through the back door, he
and Detective John Huston approached appellant=s house by walking
up the driveway toward the back of the house.  Detective Wall was wearing a
jacket with the words AHouston Police@ printed on it. 
While Huston, a police sergeant, and two uniformed patrol officers were behind
Wall, only Huston was close enough to hear the initial contact between Wall and
appellant.  None of the police officers had drawn their weapons as they
approached appellant=s house.  There was a waist-high chain
link fence around appellant=s property with an opening for a gate at
the back; however, there was no gate.  As the police officers approached the back
of appellant=s house, appellant exited the back door and met the
detectives on the sidewalk at the opening in the fence.  The initial
conversation with appellant occurred in this open area.








Detective Wall identified himself as a police officer and
told appellant he was conducting a narcotics investigation and appellant was
involved in that investigation.  Wall asked appellant if he was willing to talk
to the police, and appellant agreed.  According to Wall, he spoke to appellant
in English and appellant had no problem understanding him.  Wall asked
appellant if he was involved in narcotics in any way, either possessing or
selling.  Appellant responded there were drugs in his house because he dealt in
$20 quantities of cocaine.  Wall then told appellant it was illegal to possess
drugs and appellant would be arrested if drugs were in appellant=s house.  Wall
asked appellant if he owned the house, the nearby garage apartment, and the car
he had been seen driving earlier in the day.  Wall asked appellant if the
police could go inside to see if there were any narcotics in the house. 
Appellant agreed to let Wall into the house to search.  

Appellant, Wall, and Huston entered the kitchen through the
open back door.  While seated at a table in the kitchen, appellant agreed to
execute consent to search forms for his house, garage apartment, and car. 
Officer Noe Hernandez then retrieved five or six consent forms from his patrol
car.  After Officer Hernandez brought the consent forms, Wall read the consent
forms, which were in English, to appellant and made certain appellant also read
the forms before signing them.  The police used English language forms because
appellant understood English and had answered all of their questions up to that
point in English.  Detectives Wall and Huston, and officers Hernandez, Escobar,
and Alvarez were present when appellant signed the consent forms.  Appellant
executed three consent forms which authorized a complete search of appellant=s house, garage
apartment, and his car.[1] 
The record does not indicate the police officers ever drew their weapons or
that appellant was handcuffed prior to giving consent for the search of his
residence.








After executing the consent forms, appellant agreed to show
the police the location of the contraband in the house.  The police asked
appellant to wear gloves while showing the police where the narcotics were
located, which he agreed to do.  Initially he led the police to the bathroom
where the police recovered a brown plastic bag that contained two scales with
cocaine residue on them sitting on top of a box containing 408.4 grams of
cocaine.  Appellant then brought the police back to the kitchen where they
recovered a kilo of cocaine from underneath the kitchen counter.  The police
then read appellant his Miranda warnings.[2] 
Finally, when asked if there was any money in the house, appellant led the
police to a closet where they recovered a red bag containing cash.  Appellant
was unable to tell the police the amount of cash in the bag because, according
to appellant, his wife normally counted the money.  It was later determined the
bag contained $39,400.00.

Appellant=s wife, Olga Rodriguez, testified on
behalf of appellant.  According to Mrs. Rodriguez, both she and appellant
walked out of the house to meet the police.  Mrs. Rodriguez testified she
remained by the back door while appellant argued with the police. According to
Mrs. Rodriguez, the argument ensued after appellant refused to allow the police
to search the house.  Mrs. Rodriguez testified appellant told her to go inside
and close the door, but the police rushed through the back door and into the
house before she could get the door closed.  Mrs. Rodriguez denied appellant
consented to the search and insisted the police found the cocaine and then
forced appellant to sign the consent forms.  Mrs. Rodriguez admitted appellant
understood English, appellant=s signatures were on the consent forms,[3]
she knew appellant brought the drugs into the house, and appellant knew the
drugs were in the house.








Prior to trial, appellant filed a AMotion to Suppress
All Evidence, Including Statements of Defendant Obtained as a Result of the
Unlawful Search of His Residence and His Unlawful Arrest on March 23, 2006.@  The motion was
carried with the trial.  Appellant did not offer any additional evidence during
the motion to suppress hearing.  Appellant argued the search of appellant=s home was illegal
because (1) he signed the consent forms after the police found the cocaine in
the house;[4]
(2) the police questioned appellant after locating the initial cocaine and
before reading appellant his Miranda warnings; (3) the consent forms had
the wrong date on them;[5]
and (4) the consent forms had the wrong address on them.[6] 
Finding appellant consented both orally and in writing to the police officers
searching his home, the trial court denied appellant=s motion to
suppress.  The jury found appellant  guilty as charged and sentenced him to
life in the Institutional Division of the Texas Department of Criminal
Justice.  This appeal followed.

Discussion

I.        Appellant=s Motion to
Suppress

In his first issue on appeal, appellant contends the trial
court abused its discretion when it denied his motion to suppress because the
police violated his rights under both the Fourth Amendment to the United States
Constitution and Article I, Section 9 of the Texas Constitution when they
searched his residence.  U.S. Const. amend.
IV; Tex. Const. art. I, ' 9.  In short, appellant contends his
consent to search his residence was not voluntarily given.

 








A.      The
Standard of Review

We review a trial court=s ruling on a
motion to suppress under a bifurcated standard of review, giving almost total
deference to the trial court=s findings of historical fact and
reviewing de novo the trial court=s application of
the law.  Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
The trial judge is the exclusive trier of fact and judge of the credibility of
the witnesses and the weight to be given to their testimony at the suppression
hearing.  State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  As
the trier of fact, the trial court is free to believe or disbelieve all or any
part of a witness=s testimony, even if the testimony is
uncontroverted.  Id.; Marsh v. State, 140 S.W.3d 901, 905 (Tex.
App.CHouston [14th
Dist.] 2004, pet. ref=d).  In reviewing a trial court=s ruling on a
motion to suppress, an appellate court must view the evidence in the light most
favorable to the trial court=s ruling.  State v. Kelly, 204
S.W.3d 808, 818 (Tex. Crim. App. 2006).  If the trial court=s ruling is
reasonably supported by the record and is correct under any theory of the law
applicable to the case, the reviewing court will sustain it upon review.  Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).








Under the Fourth and Fourteenth Amendments, a search
conducted without a warrant issued upon probable cause is per se unreasonable,
subject only to a few specifically established and well-delineated exceptions. 
Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2048, 36
L. Ed. 2d 854 (1973).  A warrantless search conducted after a person has given
voluntary consent is one of those exceptions; and therefore, it violates
neither the United States Constitution nor the constitution or laws of the
State of Texas.  Brimage v. State, 918 S.W.2d 466, 480 (Tex. Crim. App.
1994).  Voluntariness is a question of fact to be determined from the totality
of the circumstances.  Ohio v. Robinette, 519 U.S. 33, 40, 117 S. Ct.
417, 421, 136 L. Ed. 2d 347 (1996).  In order to be voluntary, consent must Anot be coerced, by
explicit or implicit means, by implied threat or covert force.@ Carmouche v.
State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting Schneckloth,
412 U.S. at 228, 93 S. Ct. at 2048).  Although the United States Constitution
only requires the State to prove voluntariness of consent by a preponderance of
the evidence, the Texas Constitution requires the State to show the consent was
freely given by clear and convincing evidence.  Carmouche, 10 S.W.3d at
331.        

In making a determination of voluntariness, courts consider
various factors, including the following: whether the consenting person was in
custody, whether he or she was arrested at gunpoint, whether he or she had the
option of refusing consent, the constitutional advice given to the accused, the
length of the detention, the repetitiveness of the questioning, and the use of
physical punishment.  Flores v. State, 172 S.W.3d 742, 749 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Courts also consider the characteristics of the
consenting person, including the person=s youth,
education, and intelligence.  Id. at 750.  In examining the totality of
the circumstances surrounding a consent to search, the trial court should
consider the circumstances leading up to the search, the reaction of the accused
to pressure, and any other factor deemed relevant.  Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000).  If the record supports a finding that
consent to search was free and voluntary, we may not disturb that finding.  Carmouche,
10 S.W.3d at 331.

B.      The Trial
Court Did Not Abuse Its Discretion When It Denied Appellant=s Motion to
Suppress

In his brief, appellant argues the officers= testimony on the
search and discovery of the contraband in appellant=s home does not
pass the Asmell test@ simply because
appellant=s willingness to cooperate with the police appears not
to be in his own best interest.  However, as discussed above, we do not
evaluate an appeal of the denial of a motion to suppress using a Asmell test,@ but instead
examine whether the trial court abused its discretion. 








Viewing the evidence in a light most favorable to the trial
court=s ruling, the
record indicates the following occurred once the police made the decision to
approach appellant regarding his possible involvement with illicit  narcotics. 
Appellant voluntarily left his house to meet the police officers as they
approached the back door of appellant=s home, which the
officers had determined was the normal route of entry used by appellant. 
Having left his house by the back door, appellant met the officers at an
opening in the fence around appellant=s residence.  The
evidence shows there was no gate in that opening.  Detective Wall then
introduced himself, and told appellant the police officers were conducting a
narcotics investigation and appellant was involved in that investigation.  Detective
Wall then asked appellant if he was willing to talk to the officers about that
investigation.  Appellant agreed to talk to the officers.  Wall asked appellant
if he was involved with narcotics, and appellant replied that he was. 
Following this admission, Wall asked appellant if he had any narcotics in the
house, and appellant replied that he did.  Wall then warned appellant he would
be arrested if there were illegal narcotics in his house.  Appellant said he
understood this.  At that point, Wall asked appellant for permission to check
appellant=s house, garage apartment, and car for narcotics. 
Appellant consented to this request.  In addition, Wall asked appellant if they
could enter the rear of the house.  Appellant agreed, and led the way into the
kitchen.  At that point, Officer Hernandez retrieved the consent forms, which
were in English, from his patrol car.  The consent to search forms contained
the admonition that appellant had a constitutional right to refuse to allow the
police to search his home.  Wall then read the consent forms to appellant and
asked if appellant understood the forms.  Appellant responded he did.  Wall
then told appellant to read the forms himself and if he understood them, to sign,
which appellant did.  After appellant executed the consent forms, Wall asked
appellant to lead the officers to the contraband, rather than forcing the
officers to look through and mess up his house.  Appellant agreed, and then led
the officers to the bathroom where the initial quantity of cocaine was
recovered.








The record also shows all exchanges between appellant and
the police occurred in English.  Multiple officers testified appellant spoke
English, appeared to understand English, and never gave any indication  he did
not understand English.  In addition, an officer certified as a Spanish
translator was on the scene and available to translate if necessary, and
Spanish versions of the consent to search forms were on the reverse side from
the English.  Finally, appellant=s wife testified
appellant understood English.  There is no evidence in the record appellant was
handcuffed or physically restrained in any manner prior to giving his consent
for the police to search his house.  There is also no evidence the police
officers drew their weapons at any time before or after appellant gave his
consent to the search of his house, or the police officers threatened
appellant, or made any promises to appellant in exchange for his consent. 
Finally, while there was no evidence as to appellant=s exact age or
education, the evidence does establish he was an adult and understood the
English language.

In support of his contention the trial court abused its
discretion when it denied appellant=s motion to
suppress, appellant argues the fact the initial meeting occurred in close
proximity to the back door of his residence impacts the voluntariness of
appellant=s consent to search.  Because the officers could
approach appellant=s house by the usual and customary route
taken by appellant, which the evidence indicates was the back door, we disagree
this fact demonstrates an abuse of discretion by the trial court.  See Duhig
v. State, 171 S.W.3d 631, 638 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (police officers can approach the back
of a residence to contact an owner as long as the area is not restricted and
the officer does not deviate from the normal path); see also Atkins v. State,
882 S.W.2d 910, 913 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (officer=s approach through
the back yard of a house to contact the owner was not a search).








Appellant also points to inconsistencies in some of the
officers= testimony, the
photograph of some of the seized cocaine sitting next to a blank consent form,
and Mrs. Rodriguez=s testimony as the only realistic and
credible testimony regarding the search.  We, once again, disagree this
conflicting evidence demonstrates an abuse of discretion by the trial court. 
In making these arguments, appellant overlooks the fact that when dealing with
a motion to suppress, the trial court acts as the fact-finder and is the sole
judge of the credibility and weight to be given witness testimony.  The trial
court was free to accept or reject any conflicting evidence.  The fact the
trial court rejected the evidence emphasized by appellant and chose to believe
the testimony of the officers that appellant voluntarily consented to the
search does not establish an abuse of discretion.  Wiede v. State, 214
S.W.3d 17, 24B25 (Tex. Crim. App. 2007).  As part of appellant=s effort to show
the trial court abused its discretion, appellant points to the incorrect dates
and address on the consent to search forms.[7] 
Once again, as the fact-finder, the trial court was free to accept Wall=s testimony that
appellant was aware of the area to be searched and agreed to the corrections to
the consent forms.  Id.  In addition, because consent can be voluntary
without a written consent form, the trial court was free to regard the forms as
an indication that appellant=s earlier, oral consent was voluntary.  See
Jackson v. State, 968 S.W.2d 495, 499 (Tex. App.CTexarkana 1998,
pet. ref=d) (holding that
even assuming listing the wrong county on a written consent form would have invalidated
the written consent, the earlier oral consent justified the search).

After viewing the evidence in the light most favorable to
the trial court=s ruling, the record demonstrates the
trial court acted well within its discretion when it denied appellant=s motion to
suppress and by implication found appellant=s consent to
search was freely and voluntarily given.  Accordingly, we overrule appellant=s first issue. 

II.       Appellant=s Factual
Sufficiency Challenges








In his second issue on appeal, appellant contends the
evidence is factually insufficient to support the jury=s verdict.  While
initially framing the issue as a challenge to the factual sufficiency of the
evidence, appellant only directs our attention to the same conflicts in the
evidence he relied upon to challenge the voluntariness of his consent to the
search of his house.  We construe this as an effort by appellant to obtain
factual sufficiency review of the trial court=s denial of his
motion to suppress.  Therefore, we must first determine whether factual
sufficiency review of a trial court=s denial of a
motion to suppress is available.  Following that, we examine the factual
sufficiency of the evidence supporting the jury=s verdict.

A.      Factual
Sufficiency Review Is Inappropriate for Issues Challenging The Admissibility of
Evidence

In his factual sufficiency challenge, appellant argues only
Athere is
absolutely no evidence that [appellant] clearly and under no duress, signed the
consent to search forms.@

The Texas Court of Criminal Appeals has recognized that
questions of sufficiency and admissibility are fundamentally distinct issues:

ASufficiency@ relates to whether the elements
of an offense have been logically established by all the evidence presented,
both admissible and inadmissible.  AAdmissibility@ relates to the fairness of introducing evidence and its
logical relevance.  Accordingly, legal and factual sufficiency issues must
relate to the elements of the offense.  The issue of whether or not evidence
was illegally obtained is not an element of the offense.

Hanks
v. State, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004) (citing Caddell v.
State, 123 S.W.3d 722, 726 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d)).  Because factual sufficiency review
of a trial court=s admissibility decision is not available,
to the extent appellant is attempting to obtain a factual sufficiency review of
the trial court=s decision on his motion to suppress in
his second issue, we overrule that issue.

 








B.      The
Evidence Supporting The Jury=s Guilty Verdict
Is Factually Sufficient

In a
factual sufficiency review,[8] we consider
all the evidence in a neutral light.  Prible v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id.  First,
when considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  Our evaluation should not intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain
v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  As an
appellate court, we may not reverse a criminal conviction because the evidence
is factually insufficient unless we can say, with some objective basis in the
record, that the great weight and preponderance of the evidence contradicts the
jury=s finding.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Our analysis must consider the
evidence appellant claims is most important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).








In a possession with intent to deliver case, the State must
prove the defendant (1) exercised care, custody, control, or management over
the controlled substance; (2) intended to deliver the controlled substance to
another; and (3) knew the substance in his possession was a controlled
substance.  Tex. Health & Safety Code Ann. ' 481.002(38)
(Vernon Supp. 2007), ' 481.112(a) (Vernon 2003).  Possession is
voluntary if the possessor knowingly obtains or receives the thing possessed or
is aware of his control of the thing for a sufficient time to permit him to
terminate his control.  Tex. Penal Code Ann. ' 6.01(b) (Vernon
2003).  Under statute and as the jury was instructed in this case, A>deliver= means to
transfer, actually or constructively, to another a controlled substance . . .,
regardless of whether there is an agency relationship.  The term includes
offering to sell a controlled substance.@  Tex. Health
& Safety Code Ann. ' 481.002(8).  These elements may be
established by either direct or circumstantial evidence.  Poindexter v.
State, 153 S.W.3d 403, 405B06 (Tex. Crim. App. 2005).  

In his factual sufficiency challenge, appellant presents no
argument the evidence was insufficient to show appellant possessed cocaine, a
controlled substance, or the evidence was insufficient to establish his intent
to deliver.  In addition, appellant does not specify whether he considers the
evidence factually insufficient because, when considered by itself, the evidence supporting the verdict
is so weak the verdict is clearly wrong and manifestly unjust, or whether he contends
it is insufficient because the contrary evidence so outweighs the evidence
supporting the guilty verdict that the beyond-a-reasonable-doubt standard could
not have been met.  Instead, appellant simply rehashes the same evidence he
pointed out in his issue addressing the trial court=s denial of his
motion to suppress.  This includes appellant=s contention Wall=s credibility as a
witness describing the events leading up to appellant=s consent to the
search of his home was eroded by the testimony of other officers as well as by
the photograph showing the blank consent form, and Mrs. Rodriguez=s testimony
appellant signed the consent forms, but only after the police located the
cocaine.  Appellant also points out Mrs. Rodriguez=s denial the
initials next to the changes made on the consent to search forms were appellant=s initials. 
Finally, appellant highlights Officer Hernandez=s testimony he did
not know why all three of the consent forms had the same time, 3:30 p.m., he
only heard Wall read one of the consent forms, and he did not see the recovery
of any narcotics while he was inside the house.








The jury
is the exclusive judge of the credibility of the witnesses and the weight to be
given their testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000).  The jury is
free to believe any or all of the testimony of the State=s witnesses.  Cole v. State,
194 S.W.3d 538, 551 (Tex. App.CHouston [1st Dist.] 2006, pet. ref=d).  The jury=s decision is not manifestly unjust
merely because the jury resolved conflicting views of the evidence in favor of
the State.  Cain, 958 S.W.2d at 410.  The jury heard the testimony of
the witnesses, including that emphasized by appellant, considered the
inconsistencies, if any, and still determined appellant was guilty of possession of a
controlled substance, specifically cocaine, weighing more than four hundred
grams, with intent to deliver.

After
neutrally examining all the evidence, we hold the evidence of guilt recounted
above was not so obviously weak as to undermine confidence in the jury=s determination; nor was the contrary
evidence so strong that the beyond-a-reasonable-doubt standard could not have
been met.  The evidence is factually sufficient to support appellant=s conviction.  Accordingly, we
overrule appellant=s second issue.

Conclusion

Having overruled both of appellant=s issues on
appeal, we affirm the judgment of the trial court.    

 

 

 

/s/      John S. Anderson

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed April 22, 2008.

Panel consists of
Chief Justice Hedges, and Justices Anderson and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The consent to search forms for appellant=s residence and garage apartment located behind his
house originally listed the address as 5328 Jefferson.  The actual address of
appellant=s house and garage apartment is 5330 Jefferson.  Once
Detective Wall realized the mistake, he took the forms to the jail and   appellant
agreed to change the forms to reflect the correct address, and he initialed the
changes.  In addition, the forms for the garage apartment and the car were
incorrectly dated March 28, 2006 instead of the correct date of March 23,
2006.  All three forms were tagged by Houston Police Department property room
personnel and entered into evidence on March 23, 2006.





[2]  See Miranda v. Arizona, 384 U.S. 436,
444B45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).





[3]  Mrs. Rodriguez denied the initials on the consent to
search the house and garage apartment were appellant=s.





[4]  In addition to Mrs. Rodriguez=s testimony, this argument was based on a photograph
the State entered into evidence showing a blank consent form on a table beside
some of the cocaine found inside the house.





[5]  The consent to search form addressing appellant=s house has the correct date.  Since the cocaine was
found in appellant=s house and not in the garage apartment or appellant=s vehicle, the issue of an incorrect date on a consent
to search form is not before us in this appeal.





[6]  While it is undisputed the consent forms originally
had an incorrect address, Detective Wall testified once he discovered the forms
had the wrong address, he went to the jail and appellant authorized Detective
Wall to correct the address. 





[7]  As discussed above in note 5, the issue of an
incorrect date is not before us in this appeal.





[8]  As a factual sufficiency review begins with the
presumption the evidence supporting the jury=s
verdict is legally sufficient, and since appellant challenges only the factual
sufficiency of the evidence, he effectively concedes the evidence is legally
sufficient to sustain the conviction. See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).