### David A. CONTRERAS, Appellant,

v.

### The STATE of Texas, Appellee.

### No. 13-91-495-CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 10, 1992.

Rehearing Overruled Jan. 14, 1993.

---

Roberto G. Vela, Corpus Christi, for appellant.

Thomas L. Bridges, Sinton, John Gilmore, Asst. Dist. Atty., Portland, for appellee.

Before NYE, C.J., and GILBERTO HINOJOSA and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, David Contreras, was indicted for aggravated possession of cocaine, a controlled substance in penalty group one. *See* TEX.HEALTH AND SAFETY CODE ANN. § 481.115 (Vernon 1992). After his plea of guilty, punishment was assessed by the jury at fifteen years and one day in the penitentiary. By two points of error, appellant complains of the trial court's ruling that certain evidence was admissible during the punishment phase. We reverse and remand.

The evidence showed that Deputy Sheriff Jim Dickson was informed by a confidential informant that appellant was going to sell two ounces of cocaine at a house in Portland, Texas. Dickson and other officers staked out the house. When appellant arrived, he was arrested. Immediately before his arrest, he threw away one packet of cocaine and attempted to escape. Another packet of cocaine was found in his shirt pocket, as was a .22 caliber pistol. The total amount of cocaine in these two packets was slightly over 28 grams.

Appellant was indicted for aggravated possession of cocaine and pleaded guilty before the jury. He elected to have the jury assess punishment. During the punishment phase of the trial, the State called Dickson as a witness. Over objection, the State then began asking Dickson hypothetical questions regarding what a drug dealer would do with an ounce of cocaine. Dickson answered that persons with an ounce of cocaine were generally involved in the sale and distribution of cocaine. He testified that dealers would "cut" or dilute the cocaine, and sell an ounce of cocaine which costs about $1200.00 for about $14,000.00 on the street.

Dickson further testified that importers brought large quantities of cocaine into the country, and distributed it to smaller "kilo" dealers. These smaller dealers further distributed cocaine through this chain of drug dealers. Dickson attempted to link appellant's ounce of cocaine, which contained some small rocks or chunks, to a brick or kilo of cocaine by stating that it appeared that appellant's ounce was broken off of a larger piece of cocaine, probably a kilo.

Appellant's counsel objected and moved for a mistrial on the basis that the State was attempting to link appellant with other crimes, such as importation of cocaine, and that the State was attempting to inflame the jury with the inference that appellant was somehow part of a larger scheme involving drug importation and sale. Appellant also objected on the basis that this evidence was speculative, and no proper predicate had been laid. The court overruled the objections and denied appellant's motion for a mistrial.

During closing argument, the State argued that appellant was "an ounce dealer." The prosecutor further argued that addicts who commit crimes to get money to buy drugs, buy their drugs from appellant and people like him.

On appeal, appellant argues in his first point that he was deprived of a fair punishment hearing as a result of the admission of opinion testimony by Dickson regarding what a hypothetical drug dealer would do with an ounce of cocaine. In his second point appellant argues that he received an unfair punishment hearing because the trial court admitted over his objection the testimony regarding the "chain of drug dealers."

The State argues in this Court that the evidence was properly admitted as Dickson's opinion, and that it was relevant to "aid the jury in determining where appellant's crime stood in relation to **other cocaine traffickers.** This was done to assist the jury in assessing the proper punishment from the wide range provided in the Texas Controlled Substances Act." (emphasis added).

■ Evidence may only be admitted at the punishment phase if it is permitted by the rules of evidence. TEX.CODE CRIM.PROC. ANN. art. 37.07 § 3(a) (Vernon 1992).[1] Speculative, irrelevant testimony is inadmissible. *See Valcarcel v. State,* 765 S.W.2d 412, 417 (Tex.Crim.App.1989).

■ We agree with appellant that this testimony was improper, and that the trial court erred in permitting the State, over objection, to pursue this line of questioning. Whether other persons imported cocaine into the United States is irrelevant to the punishment appellant should receive for possession of cocaine. Whether cocaine traffickers purchase ounces of cocaine, cut the cocaine, and distribute it for a large profit is also an issue which is irrelevant to appellant's moral guilt for his crime of possession.

The evidence also tends to link appellant's crime of possession with that of cocaine importers. The State essentially presented evidence to the jury implying that appellant was somehow involved with the importation and sale of cocaine, and that he was linked with those who do so.

We hold that the trial court erred in permitting the State to follow this line of questioning. This evidence was speculative, irrelevant, a reference to extraneous offenses, and an attempt to link appellant with drug importers and dealers.

■ The next step in our analysis is to determine whether the error was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). In *Harris v. State,* 790 S.W.2d 568, 586–88 (Tex.Crim.App.1989), the Court of Criminal Appeals articulated the proper standard of review for determining whether error in a criminal trial was harmless. Rule 81(b)(2) of the Rules of Appellate Procedure provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment.

TEX.R.APP.P. 81(b)(2). The scope of review is the entire record. *Harris,* 790 S.W.2d at 586. The evidence is viewed in a neutral, impartial, and even-handed fashion, and unlike the legal and factual sufficiency standard of review, not in the light most favorable to conviction. *Id;* (distinguishing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Harmful error analysis does not merely focus upon whether sufficient evidence exists in the record to sustain the conviction, or whether overwhelming evidence of guilt exists. Rather, harmful error analysis in criminal cases is concerned with maintaining the integrity of the process. Our re-

---

1. TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a) (Vernon 1992) provides:

   Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character.

sponsibility transcends merely determining whether the conviction was correct, *Harris,* 790 S.W.2d at 585, and involves determining whether the trial was fair. *See also* TEX. CONST. ART. I § 10.

■ To determine whether error is harmful this Court must examine the source, nature, and degree of the error. Additionally, this Court must determine whether declaring the error harmless would encourage further error. *Harris,* 790 S.W.2d at 585.

■ The sources of the error were the prosecutor, and his witness, Dickson. The nature of the error was to present several improper bases upon which punishment could be assessed against appellant.

The degree of the error was serious. The "chain of drug dealer" evidence suggested that appellant was involved with kilo dealers and drug importers. The "hypothetical drug dealer" evidence was also serious error because it caused the jury to focus on extraneous offenses other persons were likely to commit rather than the act appellant committed. Appellant was not being punished for his relationship with kilo dealers or importers, or for what other drug dealers would do with an ounce of cocaine. He was being punished for possession.

We cannot find beyond a reasonable doubt that these errors did not improperly contribute to appellant's severe punishment of fifteen years and one day in prison. This is particularly true in light of the fact that he had no prior convictions. We sustain appellant's points of error and RE-VERSE and REMAND this cause for a new punishment hearing held in accordance with this OPINION.