**Carl Lee STEWART, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–93–00382–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 24, 1994.

Rehearing Denied May 19, 1994.

Philip M. Blair, Bryan, for appellant.

Bill Turner, Dist. Atty., Lisa Tanner, Asst. Dist. Atty., Bryan, for appellee.

Before COHEN, WILSON and ANDELL, JJ.

## OPINION

ANDELL, Justice.

In this appeal, we must decide whether the State may elicit testimony about narcotics *trafficking* from a law enforcement officer in order to qualify him as an expert on the *use* of drug paraphernalia, where the charged offense is drug *possession,* but not trafficking. We hold that it may not elicit such testimony for this purpose, and we reverse and remand.

A jury found appellant, Carl Lee Stewart, guilty of possession of cocaine, found an enhancement paragraph true, and assessed punishment at 40–years confinement and a $3,000 fine. In six points of error, appellant challenges the prosecutorial opening statement, unfairly prejudicial testimony, hearsay testimony, documentary evidence, physical evidence, and the length of his punishment. We reverse and remand for a new trial.

Acting on an anonymous tip, in the middle of the night, three Bryan police officers, Dennis Thane, Curtis Darby, and Mark Ricketson, went to a motel they knew as a drug trafficking location. They went to appellant's room to knock on the door and ask questions, but found that the door was open. When the officers approached, appellant came to the open door and they engaged him in conversation. The officers could see two other people in appellant's room.

The officers asked appellant if he was the occupant of the room, and he confirmed that he was. Then they asked him if they could search the room. They informed him that he did not have to consent to the search. He signed a written consent form to allow the officers to search the room. The officers recovered from appellant's room several items of drug paraphernalia, including a small cylinder, a piece of copper tubing, and a piece of copper wool, as well as a matchbox containing chips of crack cocaine and a razor blade with cocaine residue. They then arrested appellant on an outstanding warrant. They later recovered $284 cash and $168 in food stamps from appellant's person.

In his first point of error, appellant asserts the trial court erred in overruling his objection to Officer Thane's testimony about *drug trafficking.* The prosecutor questioned Officer Thane about the special police team he works with, and about his experience and expertise in fighting the drug trade on the street. After questioning Officer Thane about joint investigations with other law enforcement agencies, the prosecutor asked about his dealings with narcotics users, and the trial court overruled defense counsel's hearsay objection. The context shows that the line of questions goes to the officer's expertise about matters concerning the drug trade:

> [STATE]: How often or how many times would you say you've seen—you've observed crack cocaine?

[OFFICER]: I've observed crack cocaine probably in the neighborhood of 500 to 700 times.

[STATE]: Okay. Have you ever worked with other agencies as a member of SCAT [Street Crime Apprehension Team] in terms of sharing information about narcotics transactions, dealing, et cetera?

[OFFICER]: Yes, sir.

[STATE]: What type of information do you receive?

[OFFICER]: We receive information from other agencies such as where narcotics are being sold at here in Bryan, where they're being used at, who are the persons that are actually doing the dealing versus the ones that are actually doing the running, intelligence information on cars coming into the area that are trafficking in narcotics, houses that are dealing in narcotics. We receive that type of information from other agencies.

[STATE]: Have you ever done joint investigations with other agencies?

[OFFICER]: Yes, sir, I have.

[STATE]: What agencies are those?

[OFFICER]: We've worked with the Department of the FBI, the Brazos Valley Narcotics Task Force, Brazos County Narcotics Task Force.

[STATE]: Have you ever talked to a narcotics violator that you have arrested?

[OFFICER]: Yes, sir.

[STATE]: What type of information do you usually receive from those people?

[OFFICER]: We receive all sorts of information from narcotics traffickers and users, information that pertains to the use of it, how they use it, why they use—

[DEFENSE]: *Your Honor, this borders on hearsay, and we'd object to it.*

[STATE]: I'm establishing his expertise in the area of street level *narcotics trafficking,* Your Honor.

[COURT]: The objection is overruled.

(Emphasis added.)

After numerous questions and answers about terminology and paraphernalia of drug use and the drug trade, defense counsel again objected:

[STATE]: What is a can own [sic] drug area?

[OFFICER]: A known drug area is one in which we have documented or another narcotics agency has documented as an area in which narcotics are being sold or used in.

[STATE]: Would that be someplace where you buy drugs twenty-four hours a day, seven days a week?

[OFFICER]: Yes, sir. Twenty-four hours a day or used twenty-four hours a day. You can do that in a narcotics area.

[STATE]: What about a known drug *dealer?*

[OFFICER]: A known drug *dealer* is a phrase that we give to a person.

[DEFENSE]: Your Honor, may we approach?

[COURT]: Yes, sir.

[bench discussion]

[DEFENSE]: Your Honor, I question whether this long litany is to simply qualify the man as an expert or whether it is indeed an attempt to get *unfair prejudicial information* in front of the jury. *This has not got anything to do with whether or not this man possessed cocaine.* He's going through the entire scene of cocaine sales and drug abuse and everything, and this is very prejudicial to my client. *It's unfair prejudice.*

[COURT]: Overruled.

[end of bench discussion]

[OFFICER]: So I can go ahead and answer that question about what a known drug dealer is?

[STATE]: Yes.

[OFFICER]: A known drug *dealer* is a phrase that we give to a person that has been documented as a narcotics trafficker or dealer because of prior convictions of narcotics, arrests or information received and documented that he is actually trafficking in narcotics at the present time.

[STATE]: Now, how is crack or rock used?

[OFFICER]: Crack cocaine is utilized by inhaling it or smoking it. The way that it is ingested into the body is usually by utilizing a crack pipe. It is sometimes smoked in marijuana cigarettes, which is called a 151 or, like, in regular Marlboro cigarettes or Kool cigarettes. It can be introduced into the body that way.

The way it's introduced is it's chipped up in real small pieces. Those pieces are put into the cigarette or into the crack pipe, and then the heat source is applied to it. It turns the crack from the solid form to a liquid form to a gas form, and then it's inhaled into the body, and then it goes from the lungs into the bloodstream.

[STATE]: What is a tamping rod?

[OFFICER]: A tamping rod is used—it's usually either a very small stick, a toothpick, a piece of coat hanger, something that is very small, cylinder in shape, that has got a point on it that can be used to push down the piece of rock into the crack pipe.

The crack pipe inside has a filter that's made out of copper wool. In order to get it into the copper wool, they use the tamping rod, because usually the crack pipe is still hot from the previous smoke, as well as to get it down into the filter so that the rock won't roll out if the pipe is tilted downward.

[STATE]: On June 18th, 1992, what was your assignment?

(Emphasis added.)

Appellant's counsel objected on two grounds: relevancy and unfair prejudice. If the officer's testimony about drug trafficking was irrelevant, then it would be inadmissible under TEX.R.CRIM.EVID. 402. Any decision to admit irrelevant testimony over objection would have to be analyzed for harm under TEX.R.APP.P. 81(b)(2). On the other hand, if the testimony was relevant, then its probative value must be weighed against its prejudicial value to determine admissibility. TEX. R.CRIM.EVID. 403.

Appellant relies on *Nelms v. State*, 834 S.W.2d 110 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd), in which this Court reversed

a conviction for cocaine possession. In *Nelms*, over appellant's objection, the State repeatedly elicited testimony from a police officer that (1) the appellant wore an electronic pager or "beeper," and (2) many drug dealers also wear beepers. *Id.* at 111–13. Nelms was charged with possession, not with delivery. He argued that the testimony connecting drug dealers with beepers was evidence of extraneous criminal conduct, and was inadmissible. *Id.* at 113. This Court agreed with the appellant:

> The evidence about drug *dealing* was not relevant to any issue in the case and was calculated to prejudice the jury by referring to extraneous matters for which appellant was not on trial.
>
> . . . .
>
> The State elicited the evidence from two witnesses and referred to it during closing arguments. The evidence that people wearing beepers deal in drugs, together with the prosecutor's closing argument that appellant had no job requiring a beeper, conveyed to the jury an extraneous matter showing other criminal conduct: appellant was a drug dealer because he wore a beeper.

*Id.* at 114 (emphasis added).

The State in *Nelms* repeatedly connected beepers to drug *trafficking*, and never showed how wearing a beeper could be relevant to the charged offense of drug *possession*. This Court held that the officer's testimony that drug dealers wear beepers was evidence of an extraneous offense under TEX. R.CRIM.EVID. 404(b), and was inadmissible. *Nelms*, 834 S.W.2d at 114. Furthermore, its admission was reversible error under TEX. R.APP.P. 81(b)(2). *Nelms*, 834 S.W.2d at 114.

Appellant also cites *Contreras v. State*, 846 S.W.2d 48 (Tex.App.—Corpus Christi 1992, no pet.), where the defendant had pleaded guilty to possession of cocaine and elected to have the jury assess his punishment. The State questioned one of the arresting officers about "what a drug dealer would do with an ounce of cocaine." *Id.* at 49. The officer "answered that persons with an ounce of cocaine were generally involved in the sale and distribution of cocaine." *Id.* The court reversed, holding that the "evidence was

speculative, irrelevant, a reference to extraneous offenses, and *an attempt to link appellant with drug importers and dealers." Id.* at 50 (emphasis added).

In the present case, the State contends that the questioning was to qualify Officer Thane as an expert in the field of narcotics *trafficking.* Expert testimony is admissible if it will help the jury understand the evidence or determine a fact in issue. Tex. R.Crim.Evid. 702. An expert witness is one who will testify to matters requiring "scientific, technical, *or other specialized knowledge." Id.* (emphasis added). The expert may be qualified to speak on such matters by virtue of his "knowledge, skill, experience, training, or education." *Id.*

■ The State argues that Officer Thane's expert testimony about drug trafficking was necessary to show knowing possession of a trace amount of a drug. Without his testimony, the State argues, the jury might reasonably conclude that appellant did not know that he possessed such a small amount of cocaine. When the amount of controlled substance is so small that it cannot be quantitatively measured, there must be evidence other than the mere possession itself to show *knowing* possession. *Shults v. State,* 575 S.W.2d 29, 30 (Tex.Crim.App.1979). When the quantity is only a trace, the State may introduce evidence of the following to show that the defendant knowingly possessed a controlled substance: "(1) possession of other contraband; (2) possession of narcotic paraphernalia; (3) actions of the defendant; (4) sale or delivery of the contraband; and (5) proximity, accessibility, and location of the contraband." *Scott v. State,* 825 S.W.2d 521, 523 (Tex.App.—Dallas 1992, pet. ref'd).

These factors may be considered in determining whether the defendant has the guilty knowledge required for a conviction. *Id.* The State argues that Officer Thane's law enforcement experience and his expertise about drug *trafficking* qualified him to tell the jury how the seized paraphernalia is used in connection with drugs. This, in turn, allowed the jury to find the guilty knowledge needed to convict appellant of possession.

The objectionable testimony in *Nelms* did not relate to the finding of guilty knowledge of possession, but *only* supported the implication that the appellant was a drug dealer. It was irrelevant, harmful, and reversible. *Nelms,* 834 S.W.2d at 114. Officer Thane's testimony is distinguishable from *Nelms,* in that the State showed that Officer Thane's testimony about his experience was relevant to his expert knowledge of drug paraphernalia.

■ In neither *Nelms* nor *Contreras* did the State utilize expert testimony to show a required element of the charged offense. Officer Thane's experience dealing with narcotics trafficking was relevant to his qualifications as an expert on the use of drug paraphernalia. His testimony about the use of drug paraphernalia was, in turn, relevant to the showing of *knowing* possession. Officer Thane's testimony was, therefore, relevant under Tex.R.Crim.Evid. 401 and 702.

■ But this does not end the inquiry. Not all relevant evidence is admissible. Tex. R.Crim.Evid. 402, 403. Its probative value must be weighed against its prejudicial value to determine admissibility. Tex.R.Crim. Evid. 403. The State should have qualified Officer Thane as an expert on the usage of drug paraphernalia through testimony about his arrests of suspects for drug possession, and through testimony of his training and education on the subject. It should not have elicited testimony of his experience with drug dealers.

We hold that the probative value of Officer Thane's expertise in the area of drug trafficking was substantially outweighed by the danger of unfair prejudice. Hence, it should have been excluded. Tex.R.Crim.Evid. 403. We are unable to determine beyond a reasonable doubt that this error made no contribution to the conviction. Tex.R.App.P. 81(b)(2). The evidence of possession was weak. The prejudice from the testimony about the drug trade may well have interfered with the jury's deliberations on guilt. *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989). Moreover, the evidence probably harmed appellant at the punishment stage as well. The prosecutor asked the jury to assess punishment of 30–years confinement, but the jury assessed 40 years.

We sustain appellant's first point of error.

In his second and third points of error, appellant asserts the trial court erred in overruling his objections to the prosecutor's opening remarks about the drug trade, and in overruling his hearsay objection during direct examination of Officer Thane. Because of our disposition of point one, we need not address points two and three.

In his fourth and fifth points of error, appellant claims the search and seizure were illegal. He asserts that the trial court erred in admitting into evidence his signed consent to search form and in denying his motion to suppress the physical evidence. When the officers approached the door, appellant represented himself as the occupant of the room. The officers requested permission to search the room, and he agreed. They asked him to sign a consent to search form, but told him he did not have to do so. He signed the consent. Appellant argues that he was not really the occupant of that room and he was "fearful and signed the form involuntarily." With his consent being involuntary, he concludes that the seized physical evidence should have been suppressed.

 Police may conduct a search without a warrant and without probable cause when they have consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *Juarez v. State*, 758 S.W.2d 772, 776 (Tex.Crim.App. 1988). The voluntariness of the consent is "to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2048. Texas follows this test. *Juarez*, 758 S.W.2d at 776.

Appellant was registered to another room, but because of faulty air conditioning, he was moved to the room that was searched. He, therefore, correctly represented himself the proper occupant of that room. He was not under arrest, nor was he in custody, but was having a "friendly" conversation with the officers. He signed the consent form despite the fact that the officers informed him that he did not have to do so. The totality of the circumstances indicate that his consent was voluntary. *Juarez*, 758 S.W.2d at 776. The search and seizure were lawful.

We overrule appellant's fourth and fifth points of error.

In his sixth point of error, appellant claims that the assessment of his punishment at 40–years confinement is cruel and unusual and in violation of the eighth amendment to the United States Constitution. In light of our disposition of point one, we need not address appellant's complaint about punishment in his sixth point of error.

We reverse and remand for a new trial.