NO. 07-00-0152-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 19, 2001

______________________________

HAI HUNG DANG, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 183
RD
 DISTRICT COURT OF HARRIS COUNTY;

NO. 791753; HONORABLE WOODY DENSEN, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Presenting two points of error, appellant Hai Hung Dang challenges his conviction of murder and the resulting jury-assessed punishment of 60 years confinement in the Institutional Division of the Texas Department of Criminal Justice.  In his issues, he asserts the trial court erred in 1) allowing the prosecutor to present evidence during the guilt-innocence phase that conveyed to the jury that he had been a gang member, and 2) allowing the testimony of a State’s witness during the punishment phase of the trial, whose identity had not been revealed to the defense counsel.  We affirm the judgment of the trial court.

Inasmuch as appellant does not raise factual sufficiency questions, we will only briefly recite the facts underlying the occurrence giving rise to this prosecution.  About 11:00 p.m on August 28, 1998, Jose Martinez, Omar Romero, and Rudolpho Gutierrez were driving through southwest Houston on their way to Martinez’s home in Missouri City, Texas.  While stopped at a traffic light, Romero looked at an adjacent vehicle and noticed the driver, later identified as appellant, staring at him and his friends.  Because appellant was “looking at him,” Martinez decided to throw some coins at the other car.  After coins were thrown through the open window of appellant’s car, appellant fired several shots from a pistol.  During the incident, Romero was shot in the hand, Guiterrez was shot in the arm, and Martinez was shot in the back of his head, which led to his death.  Appellant was arrested soon after the incident.  A search of his vehicle revealed a 9 millimeter pistol, later identified as the weapon that caused Martinez’s death, and an assortment of coins.  A search of the Martinez automobile did not reveal any weapons.  After his arrest, appellant gave the police a tape-recorded statement in which he never indicated he thought his life was in danger or that he saw the occupants of the Martinez car with a weapon.

The testimony which gives rise to appellant’s first point is that of the State’s witness, Houston Police Officer Jonathan Fraley.  In testimony leading up to the officer’s averments, during cross-examination of appellant, the prosecutor queried  if “revenge” was one of his “mottos.”  When appellant denied this was the case, without objection, the prosecutor asked appellant to show the jury some tattoo dots on his hand, which appellant claimed stood for friendship, but which the prosecutor suggested stood for “crime and revenge.”

As its sole rebuttal witness, the State called Officer Fraley so he could interpret the meaning of the tattoos and rebut appellant’s testimony that the tattoos represented “friendship” in Vietnamese.  Prior to Fraley’s testimony, a lengthy discussion took place outside the jury’s presence.  During that discussion, the defense evidenced its concern that by identifying the officer as a member of the Houston Police Department’s Gang Task Force, the message would be carried to the jury that the tattoos were gang insignias with the necessary prejudicial implication that appellant was a gang member.  Defense counsel also argued that this testimony would violate a motion in limine forbidding reference to gang memberships and associated tattoos.  He further averred that such testimony would suggest inadmissible extraneous offenses.  The prosecutor then iterated and reiterated that he had no intention of having the officer refer to the tattoo as a gang tattoo or otherwise testify about gangs and his only purpose was to have the witness identify the tattooed dots as meaning “love, money, prison, crime, and revenge.”

Officer Fraley was then permitted to testify as follows:

Q:  What division of the Houston Police Department do you work for?

Defense Counsel:  Your Honor, I’m going to object for the previous reasons stated.

The Court:  Overruled.

Defense Counsel:  I would ask you to strike this testimony, ask the jury to disregard it and move for a mistrial.

The Court:  That’ll be denied.

Q:  Go ahead, Officer, what division are you in?

A:  I am currently assigned to the Fondren Gang Task Force.

Q:  What?

A:  The Fondren Gang Task Force.

Q:  What are your duties for the Fondren Gang Task Force?

A:  We document the gang members and monitor gang activity in our area, go to gang related calls.

Q:  Officer, do you have to have any kind of special training to be in that task force?

A:  I had to attend a couple of gang schools, and the rest of it was basically hands on contact.

Q:  Have you also worked out of manuals and other instructions that -

A:  Yes, generally when we go to the classes, there will be other hand-outs and binder materials that we keep in our office for reference.

Q:  Is part of the training that you went through, are you also familiar with certain tattoos and their significance?

A:  Yes. 

Consistent with his trial argument, appellant argues that by allowing Fraley to identify himself as a member of the gang task force, the court allowed the State to convey to the jury that appellant was a gang member.  Prior to its admission, appellant had objected to Fraley’s qualifications as being irrelevant under Texas Rule of Evidence 401, unfairly prejudicial under Rule 403, and that the evidence amounted to inadmissible character evidence under Rule 404(b).

The standard by which we review a trial court’s action in admitting or reviewing evidence is whether it abused its discretion.  
See Green v. State
, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996), 
cert. denied,
 520 U.S. 1200, 117 S.Ct. 1561, 137 L. Ed.2d 707 (1997).  Application of that standard means that the trial court did not reversibly err in the admission or exclusion of evidence so long as its ruling was not arbitrary or capricious and was within the “zone of reasonable disagreement.”  
Id
. at 102; 
Montgomery v. State
, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990).

En route to deciding appellant’s Rule 403 and Rule 404 claims, we must first determine if Fraley’s testimony was relevant within the purview of Rule 401 because irrelevant evidence is not admissible in any event.  Tex. R. Evid. 402.  “Relevant evidence” is defined as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Tex. R. Evid. 401.  Because he was not Vietnamese, the evidence is “relevant” in regard to Fraley’s qualifications as an expert on tattoos and his education on the subject.  
See Stewart v. State
, 874 S.W.2d 752, 756 (Tex.App.--Houston [1
st
 Dist.] 1994, pet. ref’d).  Even so, not all relevant evidence is admissible.  For example, relevant evidence may still be excluded if its probative value is substantially exceeded by the danger of unfair prejudice by its admission.  Tex. R. Evid.  403.

Thus, once a Rule 403 objection is made, the trial court is required to conduct a balancing test to determine the danger of unfair prejudice that admission of the evidence might create compared to its probative value.  
Mozon v. State
, 991 S.W.2d 841, 846 (Tex. Crim.App. 1999).  Because Rule 403 creates a presumption of admissibility of all relevant evidence, a trial judge is authorized to exclude evidence only when there is a clear disparity between the degree of unfair prejudice of the offered evidence and its probative value.  
Id.
 at 847.
 
Courts have long recognized that the trial court should be afforded considerable freedom when performing its balancing function and, because it is in a superior position to evaluate the impact of the evidence and its effect upon the jurors, the ruling of the trial court should not be overturned merely because the appellate court might have reached a different conclusion.  
Montgomery,
 810 S.W.2d at 378-79.  Even so, we cannot merely assume the balancing test was properly performed, and we must measure the trial court’s ruling against the relevant criteria by which a Rule 403 decision is made.  
Id.
 at 392.  Those criteria are:

1) how compellingly the evidence serves to make a fact of consequence more or less probable,

2) the potential the other evidence has to impress the jury “in some irrational but nevertheless indelible way,”

3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense, and

4) the force of the proponent’s need for this evidence to prove a fact of consequence, 
i.e.
, does the proponent have other probative evidence available to him to help establish the fact and is the fact related to an issue in dispute.

Magee v. State
, 994 S.W.2d 878, 888 (Tex.App.--Waco 1999, pet. ref’d).

In considering the first prong of the test, for the reasons we have expressed, we have already determined that the evidence is relevant in establishing Fraley’s expertise.  Next, the evidence as it was presented to the jury was insufficient to impress the jury in some irrational manner.  The testimony concerning the manner in which Fraley acquired his expertise 
was not mentioned at any other time during the guilt-innocence phase of the trial, nor in the prosecutor’s opening or closing arguments. 

In contending that Fraley’s testimony was sufficient to cause the jury to act in an irrational manner, appellant cites and relies upon 
Stewart.  
In that case, which concerned a drug possession charge, the State elicited testimony regarding a law enforcement officer’s experience with drug dealers to qualify him as an expert on the use of drug paraphernalia.  En route to reversing the conviction, the 
Stewart
 court explicated, “[t]he State should have qualified Officer Thane as an expert on the usage of drug paraphernalia through testimony about his arrests of suspects for drug possession, and through testimony of his training and education on the subject.  
It should not have elicited testimony of his experience with drug dealers.” 
[Emphasis added].  
Stewart
, 874 S.W.2d at 756.  In this case, as contrasted to 
Stewart
, Fraley only testified as to his training and experience on the subject, rather than giving testimony about his experience with gang members during his tenure.  Thus, the facts in 
Stewart
 are distinguishable from those present here.

Because the time necessary to develop the challenged evidence was minimal and presented no obstacle to the jury’s consideration of the offense itself, we next consider the State’s need for the evidence to prove a fact of consequence. There is nothing in the record that would indicate there was other evidence available to qualify Fraley as an expert on the point at issue, namely, the veracity of appellant’s assertion as to the meaning of his tattoos.  Thus, we cannot say the trial court abused its discretion in admitting the testimony.

We next consider appellant’s Rule 404 objection.  That rule provides that evidence of other crimes, wrongs
, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith.  Tex. R. Evid. 404(b).  There is an exception to that rule denominated as the “same transaction contextual evidence” rule, which allows evidence to be admitted when the offense would make little or no sense without its introduction. 
See Pondexter v. State
, 942 S.W.2d 577, 584 (Tex.Crim.App.1996), 
cert. denied,
 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 421 (1997).  Unless it fits within that exception, evidence of a defendant’s gang affiliations is not admissible during the guilt-innocence phase of a trial.  
Id.
  There is no indication that the crime with which we are concerned here was gang related; thus, evidence of gang affiliation was not admissible at the guilt-innocence phase.

Although the State did not directly affiliate appellant with a gang, the State’s line of questioning certainly implicated that conclusion.  Such a “back door” approach to admitting evidence was condemned in 
Schaffer v. State
, 777 S.W.2d 111, 114 (Tex.Crim.App. 1989).  In that case, the State, without directly asking an officer what another officer told him, simply asked if as a result of that conversation, “. . . would you, at this time, ask the State to drop charges” against the defendant.  
Id.
 at 113.  The Court of Criminal Appeals held that a party might not do indirectly that which they cannot do directly in order to artfully circumvent the rule, which in that case was the hearsay rule.  
Id.

Although we will not speculate as to the motive of the State in this case, the jury certainly must have realized or at least have been aware of the gang implication. Therefore, because of the manner in which it was presented, the admission of the evidence was error. Although, as the State mentioned in its submission argument, evidence concerning appellant’s gang affiliation was properly introduced during the punishment phase, we cannot consider that factor in determining the effect of the trial court’s error.   

In deciding whether reversal is required, we note the Court of Criminal Appeals holding that a mere misapplication of the rules of evidence that results in the erroneous admission of evidence is not constitutional error.  
Johnson v. State, 
967 S.W.2d 410, 417
 
(Tex.Crim.App. 1998).  Texas Rule of Appellate Procedure 44.2(b) provides that any other error, defect, irregularity, or variance that does not affect “substantial rights” of a defendant must be disregarded.  A “substantial right” of a defendant is affected when the error had a substantial and injurious effect upon the jury’s verdict. 
 King v. State
, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). 

Furthermore, a criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had a slight effect.  
Johnson v. State
, 967 S.W.2d at  417.  We have carefully examined the record and are convinced that in view of the overall strength of the State’s case, the fact that it did not emphasize the officer’s employment in its other evidence nor in its arguments in the guilt/innocence phase,  as well as the weakness of appellant’s self defense theory, the error was insufficient to deprive appellant of a substantial right. 
 
Appellant’s first issue is overruled.

In his second issue, appellant argues that the trial court erred in allowing the State to present a witness at the punishment phase of the trial whose identity had not been revealed to defense counsel.  However, appellant failed to request a continuance or postponement of the trial.  It is well settled that failure to seek a continuance or postponement of a trial when the State allegedly fails to fully effectuate discovery waives any error.  
Lindley v. State
, 635 S.W.2d 541, 544 (Tex.Crim.App. 1982)
; McQueen v. State
, 984 S.W.2d 712, 718 (Tex.App.--Texarkana 1998, no pet.)
.  Appellant’s second issue is overruled.

In summary, both of appellant’s issues are overruled and the judgment of the trial court is affirmed. 

John T. Boyd

 Chief Justice

Do not publish.