TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00777-CR







James Ray Hill, Appellant 


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT,


NO. 99-4600, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING







 A jury found James Ray Hill guilty of the offense of delivery of less than one gram
of cocaine. Tex. Health & Safety Code Ann. § 481.112(b) (West Supp. 2001). After finding that
Hill previously had been convicted of two felonies, the district court assessed punishment at seven
years in prison. In eight points of error, Hill contends that the district court erred during the guilt-innocence phase by admitting particular portions of testimony, not requiring the court reporter to
record some portions of the proceedings, and answering questions from the jury incorrectly, and
erred during the punishment phase by admitting certain exhibits. We affirm the judgment.


BACKGROUND


 Testimony at the guilt-innocence phase came from three Austin police officers and
two chemists. Austin police detective Vincent Hernandez testified about his activities in the
undercover drug purchase that led to Hill's arrest. Hernandez testified that he prepared for the
undercover drug transaction by photocopying a twenty-dollar bill and writing down its serial number.
He then drove to an area of Austin known to be an "open-air drug market" where crack cocaine was
sold. Hernandez testified that he made eye contact with one man who gave something to another
man later identified as Hill. Hill approached the car and asked what Hernandez needed. Hernandez
replied that he wanted "a twenty," which is slang for twenty dollars worth of crack cocaine. 
Hernandez testified that Hill leaned into the window and gave him a rock of crack cocaine. 
Hernandez gave Hill the twenty-dollar bill he had photocopied earlier, then drove away and notified
a group of nearby officers to arrest Hill.

 Austin police detective Robin Orten testified that he was part of the group of officers
who arrested Hill based on a description given to them by another detective. At trial, Orten
identified Hill as the man he arrested. Orten testified that, after other officers took Hill to the ground
to secure him, Orten saw a twenty-dollar bill lying next to Hill's body, close to his hands and pocket. 
Orten picked up the twenty-dollar bill and took it to Hernandez.

 Austin police chemists Tony Arnold and Ralph Owen testified regarding the
recovered cocaine rock. Both testified about the chain of custody for the cocaine rock as well as
their experience testing cocaine and the general characteristics of powdered cocaine and crack
cocaine. Owen testified that the rock Hill sold Hernandez tested to be 0.16 grams of cocaine.


DISCUSSION


 By points of error one and two, Hill contends that the district court erred at the guilt-innocence phase of trial by admitting evidence on the process of converting powdered cocaine into
crack cocaine and the resultant increase in volume and profit reaped. Hill contends the admission
of this evidence was error because it was irrelevant and was evidence of other crimes, wrongs or acts
which were admitted in order to show his character and that he acted in conformity with that
character. See Tex. R. Evid. 401, 402, 404(b). Hill complains specifically of an exchange that
occurred during Detective Hernandez's testimony.

 The State's examination of Hernandez began with Hernandez describing the scene
of the arrest as an open-air drug market with a large number of customers. The defense objected to
the relevance of a question regarding whether Hernandez knew how "they" process cocaine into rock
form rather than powder. The court overruled that objection as well as an objection to the officer's
expertise on that subject. The court sustained an objection to testimony regarding how cocaine
affects the community. The following exchange then occurred:


[Prosecutor]: Now, sir, from your experience and from your training, can you
please explain the difference between powder cocaine and crack
cocaine?


[Defense counsel]: Judge, again, she hasn't established that [Hernandez] has the
expertise to make that distinction, number one. Number two,
it is not relevant to any issue in this case, and I object for those
reasons.


The Court: Overruled.


[Prosecutor]: Q. You can go ahead and answer that question, sir.


[Hernandez]: A. Repeat the question please.


Q. Earlier you said that there was a difference between crack cocaine and powder
cocaine. One was a solid form. Could you explain how cocaine is made into
crack cocaine?


A. What you do is you take powder cocaine. Say, for example, I have an ounce in
my hand. If I want to turn it into crack, what I will do is I will use what we refer
to as cut, which is a dilutant of some type. Usually--it could be anything from
baking soda to Vitablend, which is a name brand of vitamin B powder that you
can purchase at nutrition stores. 


 Whatever I decide to use as cut, I will say take my ounce of powder cocaine, cut
it and get a quarter of that ounce, mix it with whatever dilutant I am going to
use. It is as simple as putting it in a lab beaker, mixing it up, popping it into the
microwave and letting it cook. As the water evaporates in the beaker itself, what
I am left with is a small cookie, what we refer to as a cookie because it looks just
like a cookie. That is your crack cocaine.


 It is an adulterated powder cocaine is what it is, and now it is in a solid form, so
now from a quarter ounce of powder cocaine, I now have one ounce of crack
cocaine. I will take that one ounce of crack cocaine and I will cut it up into
individual rocks, so you can see where the profit is, you know, in making your
powder cocaine into crack cocaine.


Q. Go ahead, I'm sorry.


A. And so that is basically what you do. You use cut, mix it with your powder and
cook it, and then you have your crack cocaine.


Q. So in other words, you get, by cooking this cocaine, you get more
cocaine--more usable cocaine than if you leave it in powder form?


A. What you do is you actually increase the volume of your product with an
investment of say a thousand dollars for an ounce of powder cocaine, and I
could cook, you know, just depends on how much I want to dilute it, how strong
it is. If you want stronger crack, I put more cocaine in as I cook it. If I want
weaker, I will take less powder cocaine and make more cookies. You are
increasing your profit. It is a huge profit on it.



Hernandez then made statements about smoking crack and intravenous ingestion. Interspersed were
sustained objections to nonresponsive answers and the irrelevance of questions about whether the
arrest site was part of the department's weed-and-seed program. The State's examination of
Hernandez continued into why the site was chosen for the undercover operation and then moved on
to the specifics of Hill's delivery of cocaine.

 Hill contends in point one that the portion of Hernandez's testimony regarding the
making of crack cocaine and its profits were not relevant to whether he delivered less than a gram
of cocaine. We review the trial court's decision to admit or exclude evidence under an abuse of
discretion standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996);
Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We will not reverse a trial
court whose ruling was within the "zone of reasonable disagreement." Green, 934 S.W.2d at 102; 
Montgomery, 810 S.W.2d at 391 (opinion on reh'g). Evidence is relevant if it has any tendency to
make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Evidence that
is not relevant is not admissible. Tex. R. Evid. 402.

 Testimony about phases of the drug trade not relevant to the offense charged can be
improper and harmful. See Contreras v. State, 846 S.W.2d 48, 49 (Tex. App.--Corpus Christi 1993,
pet. ref'd). In Contreras, the defendant pleaded guilty to possession of slightly over twenty-eight
grams of cocaine. At the punishment phase of trial, a State witness testified over objection regarding
the drug trade, including tracing hypothetical cocaine from the importers to the kilo dealers and
finally to the ounce dealers like the defendant. Id. The witness testified that dealers could take an
ounce of cocaine worth $2000, cut it, and resell it for $14,000. Id. Rejecting the State's argument
that the evidence lent perspective to the defendant's place in the drug trade continuum and thus what
his punishment should be, the Contreras court held that this testimony was speculative, irrelevant,
a reference to extraneous offenses, and an attempt to link the defendant with drug importers and
dealers. Id. at 50.

 We conclude that Hernandez's testimony was not subject to the same defects and
appellate challenges that were present in Contreras. Unlike the testimony in Contreras, which
surveyed the drug trade, the objected-to question in this case inquired only about the nature of the
substance Hill was charged with delivering. The State is entitled to elicit information regarding the
facts and circumstances surrounding the commission of the offense. Wilkerson v. State, 736 S.W.2d
656, 661 (Tex. Crim. App. 1987). Hernandez did not insinuate that Hill had prepared the crack;
rather, Hernandez used the pronouns "I" and "you" rather than "he." His testimony explained to the
jury why the cocaine was solid rather than powdered.

 Even if the court erred by overruling the objection to the question to Hernandez, Hill
failed to preserve error by failing to object later in the trial to a question and testimony regarding the
difference between powder cocaine and crack cocaine. See Hudson v. State, 675 S.W.2d 507, 511
(Tex. Crim. App. 1984); Crocker v. State, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978). Austin
police chemist Owen testified that adulterants and dilutants were substances added to controlled
substances to increase the bulk of the controlled substance. Without objection, the State asked,
"What sort of dilutants do you commonly see or are you commonly aware of that are used in Austin
with cocaine?" Owen responded that sugars, topical anesthetics, and baking soda are commonly
used to dilute cocaine. Owne also stated that baking soda "is used in the process of converting
[powdered] cocaine into crack cocaine." One question later, the State asked, "Can you explain just
briefly what the difference is between powder cocaine and crack cocaine?" Owen responded:

 Well, crack cocaine is a very highly addictive form of cocaine. It is smoked. It is not
water soluble. You put it in a crack pipe. The typical crack pipe is a little tube, glass
tube, put a brillo pad in it, it is heated up with a lighter and it is--the--as the rock is
heated into a vapor, it is inhaled directly into the lungs, and it immediately
affects--goes from the lungs to the blood to the brain and it is an immediate effect
and highly addictive and fast-acting, whereas the regular cocaine, cocaine
hydrochloride is a salt. It is water soluble, a salt. It can be inhaled through the nose
or injected, but crack cocaine being not water soluble, you wouldn't want to inject
it or inhale it.


Owen thus confirmed that cocaine is bulked by dilutants and converted into crack, that crack is a
solid form of cocaine rather than a powder, that crack is in the form of rocks, and that crack is highly
addictive.

 The district court's overruling of Hill's objection applied only to the question and
testimony regarding the difference between powder and crack cocaine. The officer's testimony that
crack cocaine generated a huge profit was not responsive to the question regarding the difference
between the two, but there was no objection to the profit testimony and no motion to strike. Error
was waived as to this portion of testimony that exceeded the scope of the overruled objection to the
question regarding the difference between powder and crack cocaine. See Tex. R. App. P. 33.1.(a);
Brimage v. State, 918 S.W.2d 466, 504 (Tex. Crim. App. 1994). We overrule point one.

 In his second point of error, Hill contends that Hernandez's testimony about the
difference between powder and crack cocaine was evidence of other crimes, wrongs, or acts not
otherwise admissible under Texas Rule of Evidence 404(b). He did not raise this contention at trial.
Hill's trial objections that Hernandez had not been qualified as an expert and that his answer would
be irrelevant do not comport with his 404(b) appellate complaint. We conclude that Hill did not
preserve the error he asserts in point two because he failed to object on that basis in the district court. 
See Camacho v. State, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993). We overrule point two.

 By points of error three and four, Hill contends that the district court erred by not
having the court reporter record and transcribe all proceedings during trial, including proceedings
regarding notes from the jury during its deliberations. The court reporter is required to make a full
record of the proceedings unless excused by agreement of the parties. Tex. R. App. P. 13.1(a). No
such agreement is apparent.

 We nevertheless will overrule the points of error because Hill has neither preserved
error nor shown the requisite harm. To preserve error on a claim that the court reporter failed to
record certain proceedings, a defendant must object at the trial court. See Williams v. State, 937
S.W.2d 479, 487 (Tex. Crim. App. 1996); Walthall v. State, 594 S.W.2d 74, 81 (Tex. Crim. App.
1980) (bench conferences); Wells v. State, 578 S.W.2d 118, 119 (Tex. Crim. App. 1979) (voir dire);
Quinn v. State, 991 S.W.2d 52, 54 (Tex. App.--Fort Worth 1998, pet. ref'd) (bench conferences);
see also Tex. R. App. P. 33.1(a). This Court has held that an objection was necessary to complain
of the failure of a court reporter to record a court's substantive response to a question from the jury
in a felony case. See Brooks v. State, 967 S.W.2d 946, 949-50 (Tex. App.--Austin 1998, no pet.). 
Though in Brooks we held that the duty to record was mandatory under Texas Code of Criminal
Procedure article 36.27 and that the failure to record was reversible error, we also held that the
failure to object to the failure to record limited the appellate court to reversing only if the defendant
showed egregious harm. Id.; see also Tex. Code Crim. Proc. Ann. art. 36.27 (West 1981). 
Egregious harm is harm so great that it denied the defendant a fair and impartial trial. Brooks, 967
S.W.2d at 950 (citing Skinner v. State, 956 S.W.2d 532, 544 (Tex. Crim. App.1997); Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). Errors that result in egregious
harm are those which affect the essential dispute in a case or disturb the basis of the defensive theory. 
Almanza, 686 S.W.2d at 172; see also Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 

 In the instant case, Hill did not object to the court reporter's failure to record any
portion of the trial proceedings. Additionally, Hill has failed to show that he suffered egregious
harm or even that anything pertinent to his appeal occurred during any of the unrecorded
proceedings. We overrule points three and four.

 By points of error five and six, Hill contends that the district court erred in its answers
to notes the jury sent to the court during deliberations. The jury asked, "In the course of preparing
a case, if an illegal action is committed by the State, even if minor, does that overthrow the case?" 
After the court asked for clarification, the jury sent the court another note and asked, "In the case of
State exhibit 3, is it illegal to copy US currency without voiding it? If the action is not legal, does
that make exhibit 3 non-admissible. Or further, does it call the whole case into question?" The court
responded, "The answer that we are submitting to that is as follows: The jury is not asked to consider
whether State's Exhibit 3 is admissible because State's Exhibit 3 was admitted just as other evidence
and exhibits for the jury to consider in arriving at a verdict." Hill contends that the court's response
was erroneous because the jurors were entitled to disregard illegally obtained evidence. See Tex.
Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2001). Hill contends that State's Exhibit 3 (SX-3),
a photocopy of the twenty-dollar bill handed to the seller of the crack cocaine, was obtained in
violation of a federal statute providing that "[w]hoever prints, photographs, or in any other manner
makes or executes any engraving, photograph, print, or impression in the likeness of any such
obligation or other security, or any part thereof . . . except by direction of some proper officer of the
United States--Is guilty of a class B felony." See 18 U.S.C.A. § 474 (2000). He contends SX-3 is
not within the exception for illustrations that requires they be a different size than the illustrated
obligation. See 18 U.S.C.A. § 504 (2000). Because Hill did not raise this objection at trial, he
contends that this is fundamental error that caused him egregious harm. See Brooks, 967 S.W.2d at
950.

 Without considering whether the district court erred, we find no egregious harm. The
answer Hill believes should have been given would have allowed the jury to disregard the photocopy
of the twenty-dollar bill; it would not have allowed the jury to disregard all of the testimony about
the bill itself, nor would it have allowed the jury to "overthrow" the entire case. The photocopy,
which Hernandez made before the transaction, was introduced to show that the twenty-dollar bill
found near Hill after the transaction was the same twenty-dollar bill Hernandez gave to the seller,
and thus Hill was the seller. Even if the jury disregarded the photocopy, they could not have ignored
other testimony connecting the particular twenty-dollar bill and Hill. Hernandez's identification of
the twenty-dollar bill was not entirely dependent on the photocopy; besides identifying the
photocopy, Hernandez testified that his report contained the serial number of the bill he gave to Hill. 
In addition to identifying the money, Hernandez identified Hill as the man who sold him the crack
cocaine just five minutes after the transaction. At trial, Hernandez again identified Hill as the man
who sold him the crack cocaine. Orten identified the twenty-dollar bill and connected it to
Hernandez as "[Hernandez's] money" from the transaction. Orten also identified Hill at trial. We
conclude that the photocopy of the twenty-dollar bill did not contribute materially to the
identification of Hill and the consequent conviction, and thus did not cause egregious harm. We
overrule points five and six.

 By points of error seven, eight, and nine, Hill complains of the admission of SX-4 and
SX-5, which contained copies of judgments of conviction based on pleas of nolo contendere to
respective charges of theft and driving with a suspended license. (1) He contends the court
fundamentally erred by admitting these exhibits and by considering them. He contends that the
exhibits were fatally flawed because the judgments lacked language showing that he was adjudged
guilty. See Tex. Code Crim. Proc. Ann. art. 42.01, § 1 (West Supp. 2001); Richie v. State, 542
S.W.2d 422, 424 (Tex. Crim. App. 1976) ("Although the 'judgment' in the instant case recites
appellant's plea of guilty and the trial court's acceptance of the same, it nowhere states that appellant
was adjudged to be guilty . . . ."). The code requires that judgments "reflect . . . [i]n the event of a
conviction that the defendant is adjudged guilty of the offense as found by the verdict of the jury or
the finding of the court . . . ." Tex. Code Crim. Proc. Ann. art. 42.01, § 1(8). Both challenged
judgments state, "The Court admonished the Defendant as required, heard the Defendant's plea and
evidence admitted thereon, and found the Defendant GUILTY [of the charged offense]." This is not
the mere acceptance of the plea criticized in Richie, 542 S.W.2d at 424, but an affirmative finding
that Hill was guilty. The absence of the word "adjudged" does not deprive the judgment of any
power. We conclude that the district court committed no error in admitting and considering SX-4
and SX-5. We overrule points seven, eight, and nine.


CONCLUSION


 Having overruled Hill's points of error, we affirm the judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: October 11, 2001

Do Not Publish

1.   Hill does not challenge evidence relating to the two felony convictions used to enhance his
punishment.