11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jessie Gilbert Hamer

Appellant

Vs.                   Nos. 11-02-00264-CR &
11-02-00265-CR -- Appeals from Comanche County

State of Texas

Appellee

 

Jessie
Gilbert Hamer was charged in separate indictments with attempted capital murder
for shooting at 2 peace officers.  In
each cause, the jury convicted appellant of attempted capital murder, found
that he used a deadly weapon, and assessed his punishment at confinement for 75
years.  We affirm.  

Appellant
presents identical issues in each cause. 
In the first issue, he contends that the finding as to his competency
was against the great weight and preponderance of the evidence.  In the second issue, he contends that the
evidence was legally insufficient to show that Doug Caffey was acting in the
lawful discharge of an official duty by arresting appellant.  In the third issue, appellant argues that
the evidence was legally insufficient to show that John Boyd was a peace
officer.  In the fourth issue, appellant
argues that the trial court erred in admitting evidence that lacked the proper
chain of custody.  In his final issue, appellant
contends that he was denied the effective assistance of counsel at trial.  








In the
first issue, appellant contends that the verdict finding him competent to stand
trial was so against the great weight and preponderance of the evidence as to
be manifestly unjust.  In reviewing
appellant=s first issue, we must consider all the
evidence relevant to competency and determine whether the judgment is so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  Meraz v. State, 785 S.W.2d 146,
155 (Tex.Cr.App.1990).  A defendant is
incompetent to stand trial if he does not have either the ability to consult
with his attorney with a reasonable degree of rational understanding or a
rational and factual understanding of the proceedings against him.  TEX. CODE CRIM. PRO. ANN. art. 46.02, ' 1A (Vernon Pamph. Supp. 2003).  A trial court is required to hold a separate
competency hearing when evidence is introduced, either pretrial or during
trial, that could rationally lead to a conclusion of incompetency.  TEX. CODE CRIM. PRO. ANN. art. 46.02, ' 2 (Vernon 1979); Arnold v. State, 873 S.W.2d
27, 36 (Tex.Cr.App.1993), cert. den=d, 513 U.S. 830 (1994).  

The record
shows that the trial court conducted a separate competency hearing.  Only two witnesses testified at that
hearing:  Harold D. Scott, M.D. and
Stephen L. Mark, M.D.  Both of these
witnesses were psychiatrists appointed by the trial court to examine
appellant.  Dr. Scott testified that he
had been appointed twice to examine appellant. 
The first examination of appellant was ordered by a different court in
August 2001 and involved an unrelated charge against appellant.  During this two-hour examination, appellant
cooperated and provided information to Dr. Scott.  Dr. Scott determined that appellant was competent to stand trial
in that case even though appellant was suffering from a mental disorder, which
he referred to as a delusional disorder and paranoia.  








Dr. Scott
evaluated appellant again on May 22, 2002. 
The examination lasted only one hour because appellant would not speak
to Dr. Scott about anything but Anonconflictual superficial@ matters such as the weather and the food at the jail.  According to Dr. Scott, appellant stated
that the interview was not his idea, that he did not believe the interview to
be in his best interest, and that he chose not to participate.  Appellant informed Dr. Scott that he was Adismissed.@  Dr. Scott testified that
appellant was courteous but uncooperative. 
After this second examination of appellant, Dr. Scott determined that
appellant was no longer competent to stand trial.  Dr. Scott=s opinion was based upon both interviews and upon information that he
had obtained elsewhere, including appellant=s Abizarre thoughts@ of relinquishing his citizenship and not
having to abide by local law.  In Dr.
Scott=s opinion, based on reasonable medical
judgment, the likely cause of appellant=s current incompetency was Athe influence of the previous paranoid illness@ that remained untreated.  Dr. Scott=s concern about appellant=s competency was not that he lacked an understanding of the proceedings
against him but that he lacked the present ability to consult with his
attorney.  Dr. Scott acknowledged,
however, that he Acannot
assert with full knowledge that [appellant] was not just being stubborn,
oppositional or obstructionistic.  There
can be other causes for a Defendant in trouble not speaking.@  

Dr. Mark
conducted a 15 to 20 minute examination of appellant in March 2002.  Dr. Mark disagreed with Dr. Scott=s findings regarding appellant=s competency.  He testified that appellant was capable of speaking and that he
stated his name, date of birth, and address. 
A deputy sheriff who brought appellant to the exam told Dr. Mark that
appellant was not a problem in the jail, that he was cooperative, and that he Atalk[ed] okay and [did] not act crazy or
anything like that.@  Dr. Mark testified that appellant listened
to and seemed to understand the warnings that Dr. Mark gave him at the
beginning of the exam.  Dr. Mark pointed
out that appellant had no history of mental illness Aother than the mental problems coming up when
he was accused of something@ and that appellant had only been evaluated Arelative to a charge against him, just like
this time.@ 
Appellant had never been treated or hospitalized for any mental illness
or disorder.  

After
reviewing all of the evidence relevant to competency, we hold that the jury=s finding was not so against the great weight
and preponderance of the evidence as to be manifestly unjust.  Even Dr. Scott admitted that appellant may
have been Ajust being stubborn, oppositional or
obstructionistic.@  Appellant=s first issue is overruled.  

In the
second issue, appellant challenges the legal sufficiency of the evidence in
Cause No. 11-02-00264-CR.  Appellant
asserts that the evidence is insufficient to show that Gorman Chief of Police
Doug Caffey was Aacting in the lawful discharge of an official
duty, to wit: arresting defendant@ because Chief Caffey was not authorized to arrest appellant outside
the jurisdictional limits of Eastland County. 
See Angel v. State, 740 S.W.2d 727 (Tex.Cr.App.1987)(holding that city
police officers have county-wide jurisdiction to arrest offenders).  The record shows that the offense and the
arrest in this case occurred in Comanche County.  Gorman is in Eastland County. 









On the
night of December 17, 2001, two Comanche County deputies attempted to execute a
warrant for appellant=s
arrest.  The warrant was based upon an
alleged assault committed by appellant against his mother.  The deputies went to his mother=s residence, knocked on the door several
times, and announced who they were. 
Appellant finally responded, A[I]f you knock on the f-----g door one more time, I=m going to blow your f-----g heads off.@  The
deputies heard the sound of a lever-action rifle or shotgun chambering a shell,
and they left.  

The next
day, appellant=s mother called to inform the authorities
that appellant had left the residence. 
Comanche County deputies located appellant driving his car.  They pursued appellant with their lights and
sirens on.  During the pursuit, which
ended at his mother=s
residence, appellant held a gun out his car window and fired shots toward the
authorities.  Appellant went inside his
residence and a three-hour standoff ensued. 
During the pursuit and the standoff, officers from various departments
became involved.  During the standoff,
Comanche County Sheriff John Boyd obtained a warrant for appellant=s arrest for assaulting a peace officer.  Finally, Sheriff Boyd decided to act before
it got dark outside.  Sheriff Boyd
requested that Chief Caffey accompany him to the door.  Chief Caffey was a certified hostage crisis
negotiator and was the only officer who knew appellant personally.[1]  

Sheriff
Boyd and Chief Caffey crawled to the front door, knocked, and announced who
they were.  Appellant did not respond
even though the officers had made five or six attempts.  Upon Sheriff Boyd=s instruction, Chief Caffey kicked the door
to open it.  Appellant fired three shots
through the door.  Sheriff Boyd stepped
back, got tangled up in some wire, and fell down.   Chief Caffey returned fire with one shot that went through the
door frame.  Then, Chief Caffey kicked
the door open and saw appellant standing there and pointing a rifle at Chief
Caffey.  Chief Caffey fired one more
round, and appellant then staggered backwards and disappeared out of
sight.  Chief Caffey entered the
residence and removed the rifle after appellant fell to the floor.  Appellant had been shot in the wrist and the
abdomen.  The testimony regarding the
position of the bullet holes in the door showed that the shots that appellant
fired would have struck a person in the chest if that person had been standing
in a normal position to open the door. 
Fortunately, Sheriff Boyd and Chief Caffey were Ahugging the wall@ and, thus, were not injured.  








We hold
that the evidence is legally sufficient to show that Chief Caffey was acting in
the lawful discharge of an official duty when appellant attempted to shoot
him.  Chief Caffey was asked by the
Comanche County Sheriff to help arrest appellant.  The Comanche County Sheriff=s Department had obtained warrants for appellant=s arrest. 
See TEX. CODE CRIM. PRO. ANN. art. 15.06 (Vernon Supp. 2003)(providing
that Aany peace officer to whom said warrant is
directed, or into whose hands the same has been transferred, shall be
authorized to execute the same in any county in this State@). 
Even an arrest without a warrant is lawful when the arrest is made by an
officer acting outside of his jurisdiction if an officer with territorial
jurisdiction is present at the time. 
Lewis v. State, 15 S.W.3d 250, 255 (Tex.App. - Texarkana 2000, no pet=n); Morris v. State, 802 S.W.2d 19, 20-21
(Tex.App. - Houston [1st Dist.] 1990, pet=n ref=d); Cruz v. State, 762 S.W.2d 624, 625
(Tex.App. - Houston [14th Dist.] 1988, no pet=n).  Although outside the
boundaries of his geographic jurisdiction, Chief Caffey was not acting outside
the scope of his legal authority.  See
Christopher v. State, 489 S.W.2d 575, 576-77 (Tex.Cr.App.1973); O=Hara v. State, 837 S.W.2d 139 (Tex.App. -
Austin 1992, pet=n ref=d).  Appellant=s second issue is overruled.  

In the
third issue, appellant challenges the legal sufficiency of the evidence in
Cause No. 11-02-00265-CR.  Appellant
asserts that the evidence is insufficient to show Athat John Boyd >was a peace officer.=@  The record shows that Sheriff
Boyd was the duly elected sheriff of Comanche County but that he did not have a
permanent peace officer license. 
Sheriff Boyd=s
license had become inactive before he took office.  








The Texas
Penal Code defines a peace officer as Aa person elected, employed, or appointed as a peace officer under
Article 2.12, Code of Criminal Procedure, Section 51.212 or 51.214, Education
Code, or other law.@  TEX. PENAL CODE ANN. ' 1.07(a)(36) (Vernon 2003).  Pursuant to TEX. CODE CRIM. PRO. ANN. art.
2.12(1) (Vernon Supp. 2003), Asheriffs, their deputies, and those reserve deputies who hold a
permanent peace officer license issued under Chapter 1701, Occupations Code@ are Apeace officers.@  We disagree with appellant=s contention that Article 2.12(1) requires a
sheriff to be licensed in order to be a peace officer.  Rather, we construe Article 2.12(1) to
require reserve deputies, not sheriffs or their non-reserve deputies, to be
licensed in order to be peace officers. 
See Op. Tex. Att=y Gen. No. JC-0522 (2002)(where the attorney general reached the same
conclusion with respect to constables, deputy constables, and those reserve
deputy constables who hold a permanent peace officer license).  Under Article 2.12(1), Sheriff Boyd was a
peace officer even though he was not licensed. 
We hold that the evidence was legally sufficient to show that appellant
attempted to Acause the death of Boyd by shooting him when
Boyd was a peace officer who was acting in the lawful discharge of an official
duty@ and that appellant Aknew Boyd was a peace officer,@ as charged in the indictment.  See Freeman v. State, 556 S.W.2d 287, 303-04
(Tex.Cr.App.1977)(deputy sheriff who had taken the wrong oath of office
constituted a peace officer for purposes of capital murder statute).  The third issue is overruled.  

At
appellant=s behest, appellate counsel has briefed two
more arguable issues.  In the fourth
issue, counsel raises the issue of the proper chain of custody of the rifle
that was admitted into evidence.  We
agree with appellate counsel=s assessment that the rifle=s chain of custody was sufficiently proven to be admissible under
Stoker v. State, 788 S.W.2d 1 (Tex.Cr.App.1989), cert. den=d, 498 U.S. 951 (1990).  The
record shows that Texas Ranger Jeffrey Don Robertson performed the crime scene
investigation at Sheriff Boyd=s request.  Ranger Robertson
testified that he seized the rifle from appellant=s residence, that he placed an identifying mark on the rifle, and that
he delivered it to someone in Aevidence receiving@ at the Texas Department of Public Safety Crime Laboratory.  Ranger Robertson identified the rifle
introduced at trial as the one he had seized from appellant=s residence. 
A firearms examiner employed by the D.P.S. crime lab also identified the
rifle by the distinctive markings that he had placed on it.  The firearms examiner testified that he
obtained the rifle from the evidence coordination section of the lab, which
initially receives all of the evidence at the lab.  After he was finished examining the rifle, the firearms examiner
returned it to the evidence coordination section, which then returned it to the
submitting agency.  Even though no one
from the evidence coordination section testified, the rifle=s chain of custody was sufficiently
established by proof of the beginning and the end of the chain of custody.  See Lagrone v. State, 942 S.W.2d 602, 617
(Tex.Cr.App.), cert. den=d, 522 U.S. 917
(1997); Stoker v. State, supra at 10. 
Nothing in the record suggested that the evidence had been tampered with
or altered.  The fourth issue is
overruled.  








In the
fifth issue, appellate counsel raises the issue of the effectiveness of trial
counsel.  In this issue, appellate
counsel asserts that appellant advised him that trial counsel failed to
investigate or call witnesses regarding the following:  the course taken by appellant and the
officers during the pursuit, the officers involved in the pursuit, and the
caliber of the bullets that wounded appellant. 
As noted by appellate counsel, there is nothing in the appellate record
to support appellant=s
contentions.  Consequently, appellant
has not shown on appeal that trial counsel=s performance was deficient or that, but for trial counsel=s alleged errors, the result of the trial
would have been different.  See
Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d
770 (Tex.Cr.App.1999).  The fifth issue
is overruled.  

The
judgments of the trial court are affirmed. 


 

PER
CURIAM

 

May 1, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b). 

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J. 











[1]Chief Caffey had bailed hay for appellant=s grandfather.